JAMES C. HO, Circuit Judge:
*239 The Texas Sales Representative Act seems straightforward enough: When a sales representative is entitled to a sales commission, but the principal refuses to pay, the sales representative can file suit and seek treble damages. As the Act provides, a principal who fails to pay a commission is liable for "three times the unpaid commission due the sales representative," as well as for reasonable attorney's fees and costs. TEX. BUS. & COM. CODE § 54.004.
Putting the Act into practice, however, presents questions that the plain language of the Act does not appear to answer. At what moment in time do we determine the amount of any "unpaid commission due" that is subject to trebling? A number of options are possible, none of which appear to be compelled by the text. Do we assess treble damages at the moment the commission is owed, if it is not paid immediately (or if it is not paid within some reasonable grace period-and if so, what grace period shall courts apply)? Or do we treble based on any commissions owed at the time the suit is filed? Or do we treble based on any commissions owed when the principal is held liable for unpaid commissions? Or on yet some other date? And does the Act award reasonable attorney's fees, regardless of whether treble damages are also awarded?
These questions of statutory interpretation are issues of first impression that will undoubtedly affect many Texas sales representatives and their principals. They are questions that this court could answer today, to be sure. But an answer from our court would only bind those future litigants whose disputes fall within the diversity jurisdiction of a federal court. To best serve the people of Texas, these questions should be answered by the only court that can issue a precedential ruling that will benefit all future litigants, whether in state or federal court. Accordingly, we certify two questions to the Supreme Court of Texas.
I.
Conveying & Power Transmission Solutions ("CPTS") agreed to act as an independent sales representative for the Horsburgh & Scott Company, responsible for marketing and securing sales of Horsburgh products. In return, CPTS earned a commission on the orders it secured. The agreement between the parties includes various provisions that govern the calculation and timing of commission payments (for example, commission payments are due "on approximately the 10th of each month following the payment of a commissionable order").
The parties later terminated the arrangement. In their termination agreement, Horsburgh agreed that it would "pay commissions to CPTS in a manner consistent with the Agreement on sales from orders received by [Horsburgh] on or before May 24, 2015." CPTS asserts that, pursuant to this provision, Horsburgh owed about $280,000 in commissions.
Over the approximately seventeen-month period that followed the termination, Horsburgh made consistent commission payments that were nevertheless indisputably untimely under the stated *240 terms of their agreement. Horsburgh admitted that it consciously paid CPTS late, in part because it prioritized other business expenses. The record does not reflect the precise amounts that Horsburgh paid in an untimely fashion. But the parties agree that (1) at least some commission payments were untimely, and (2) Horsburgh eventually paid all the commissions it owed, plus approximately 5% interest.
CPTS eventually sued in Texas state court for treble damages under the Act, as well as for breach of contract and quantum meruit. Horsburgh removed to federal court under diversity jurisdiction. After CPTS sued, Horsburgh paid between $77,000-$90,000 to cover the remaining outstanding commissions owed. The district court subsequently granted summary judgment to Horsburgh, on the ground that Horsburgh no longer owed CPTS any unpaid commissions. CPTS appeals only the portion of the district court judgment denying relief under the Act.
II.
The parties disagree on whether Horsburgh's late commission payments entitle CPTS to treble damages and attorney's fees. The Act provides:
A principal who fails to comply with a provision of a contract under Section 54.002 relating to payment of a commission ... is liable to the sales representative in a civil action for: (1) three times the unpaid commission due the sales representative; and (2) reasonable attorney's fees and costs.
TEX. BUS. & COM. CODE § 54.004. Neither party disputes that the parties had a contract under § 54.002, and that Horsburgh violated a contractual provision "relat[ed] to a payment of a commission" by making untimely payments. Id. § 54.004.
The issue here is whether there are any "unpaid commission[s] due." CPTS contends that it is entitled to treble damages on all untimely commission payments. It further argues that CPTS may recover attorney's fees regardless of whether it recovers treble damages. Horsburgh responds (and the district court agreed) that, once Horsburgh paid all commissions (and CPTS accepted those late payments), nothing was left "unpaid" or "due." Horsburgh further asserts that, absent a treble damages award, CPTS was likewise not entitled to attorney's fees.
On its face, the statute plainly contemplates that the existence of unpaid commissions will result in treble damages. The statute does not expressly state, however, which date the court should use to determine the existence and amount of any "unpaid commissions due," for purposes of trebling. Do we treble any commission that was not paid immediately on the day it was due under the contract (or perhaps after some reasonable grace period had passed)? Do we treble any commission left unpaid on the day the suit is filed? Do we treble any commission unpaid on the day the principal is held liable? Or do we use some other day?
This case illustrates the significant difference that the answer to these questions can make. If we were to treble every commission payment that was not paid immediately at the moment it was due, Horsburgh would be subject to treble damages based on $280,000 in unpaid commissions. Alternatively, if we consider only what is due at the time CPTS filed suit, we would treble as much as $90,000 in commissions unpaid at that time. Or we might look at the time of judgment, after Horsburgh had paid all outstanding commissions, potentially leaving nothing to treble. The plain text of the Act does not provide an answer. Nor have we found meaningful guidance from any Texas precedent.
*241 In addition, in the event that a plaintiff does not recover treble damages, the parties dispute whether a plaintiff can nevertheless seek reasonable attorney's fees. In other statutory contexts, Texas courts have often concluded that a plaintiff must secure a damages award in order to additionally recover attorney's fees. But those decisions typically rely on the text of the statute for guidance. See , e.g. , MBM Fin. Corp. v. Woodlands Operating Co., L.P. , 292 S.W.3d 660, 666 (Tex. 2009) (attorney's fees "in addition to the amount of a valid claim"); Gulf States Utilities Co. v. Low , 79 S.W.3d 561, 567 (Tex. 2002) (attorney's fees for "consumer[s] who prevail"); Sw. Bell Mobile Sys., Inc. v. Franco , 971 S.W.2d 52, 55-56 (Tex. 1998) (attorney's fees for "prevailing parties"). It is not certain from those precedents how the Supreme Court of Texas might construe the Texas Sales Representative Act on the question of attorney's fees.
We have the discretion to certify questions of law to state courts of last resort. See , e.g. , In re Deepwater Horizon , 807 F.3d 689, 698 (5th Cir. 2015). On occasion, we have considered the following factors when deciding whether to certify:
(1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.
Swindol v. Aurora Flight Scis. Corp. , 805 F.3d 516, 522 (5th Cir. 2015) (internal quotation marks omitted) (quoting Williamson v. Elf Aquitaine, Inc. , 138 F.3d 546, 549 (5th Cir. 1998) ).
Certification is advisable here. First, as we have explained, the plain text of the statute does not appear to answer the timing questions presented by this case. Nor have the parties or this court been able to identify any meaningful authority from any Texas state court that might guide our interpretive efforts. Second, the Texas Sales Representative Act governs the substantive rights and obligations of countless businesses and individuals across the state. So Texas has an obvious interest in providing its citizens with a proper and uniform statewide interpretation of the Act, binding in both state and federal court, which only the Supreme Court of Texas can provide. Finally, we have identified discrete issues for review, and the Supreme Court of Texas has promptly responded to our requests in the past. Certification is accordingly appropriate.
III.
We hereby certify the following questions of law to the Supreme Court of Texas:
(1) What timing standard should courts use to determine the existence and amount of any "unpaid commissions due" under the treble damages provision of TEX. BUS. & COM. CODE § 54.004(1) ?
(2) May a plaintiff recover reasonable attorney's fees and costs under TEX. BUS. & COM. CODE § 54.004(2), if the plaintiff does not receive a treble damages award under TEX. BUS. & COM. CODE § 54.004(1), and under what conditions?
We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.