# IN THE SUPREME COURT OF TEXAS

══════════

No. 18-1099

══════════

JCB, INCORPORATED, D/B/A CONVEYING & POWER TRANSMISSION SOLUTIONS,
APPELLANT,

v.

THE HORSBURGH & SCOTT COMPANY, APPELLEE

══════════════════════════════════════

ON CERTIFIED QUESTIONS FROM THE UNITED STATES
COURT OF APPEALS FOR THE FIFTH CIRCUIT

══════════════════════════════════════

**Argued March 13, 2019**

JUSTICE BLACKLOCK delivered the opinion of the Court.

This opinion addresses two questions of Texas law certified from the United States Court of Appeals for the Fifth Circuit.[1] Our jurisdiction to answer these questions comes from article V, section 3-c of the Texas Constitution. The questions concern the damages and attorney's fees available under chapter 54 of the Business and Commerce Code, also known as the Texas Sales Representative Act. TEX. BUS. & COM. CODE §§ 54.001–.006. We accepted the questions[2] and answer them below.

──────────────

[1] *See* TEX. R. APP. P. 58.

[2] 62 Tex. Sup. Ct. J. 178 (Nov. 30, 2018).

## I. Factual, Legal, and Procedural Background

The disputed portion of the statute provides:

**§ 54.004.  Damages**
A principal who fails to comply with a provision of a contract under Section 54.002 relating to payment of a commission or who fails to pay a commission as required by Section 54.003 is liable to the sales representative in a civil action for:
    (1) three times the unpaid commission due the sales representative; and
    (2) reasonable attorney's fees and costs.

TEX. BUS. & COM. CODE § 54.004.

The Fifth Circuit sets out the following undisputed facts, which we supplement with undisputed facts provided by the parties and district court.  Plaintiff JCB, Inc., d/b/a Conveying & Power Transmission Solutions ("JCB"), was a commissioned sales representative for Defendant Horsburgh & Scott Company ("Horsburgh"), a manufacturer of gears and gearboxes.  Under a written agreement, JCB's commissions were due "on approximately the 10th of each month following the payment of a commissionable order by the customer to [Horsburgh]."  The parties later terminated that agreement but separately agreed that Horsburgh would pay commissions on orders received up to May 24, 2015.  JCB claims Horsburgh owed approximately $280,000 in commissions under these agreements.  JCB claims all these commissions were paid late, while Horsburgh says only some were paid late.

In March 2016, Horsburgh told JCB it could either accept further delays in payment or accept reduced commissions.  JCB rejected these options and sued Horsburgh for treble damages and attorney's fees under section 54.004.  Prior to the suit, Horsburgh made some commission payments.  When suit was filed, Horsburgh still owed commissions totaling $77,000–$90,000.  The case was removed to federal court.  While the case was pending, Horsburgh paid all remaining

2

commissions plus approximately five percent interest. Horsburgh then moved for summary judgment.

The federal district court granted summary judgment for Horsburgh. The court's opinion briefly addressed the applicability of section 54.004. The court found persuasive Horsburgh's argument that "the Act does not apply because it only applies to unpaid commissions, and all of the commissions owed [to JCB] have been paid." *JCB, Inc. v. Horsburgh & Scott Co.*, No. 6:16-CV-146-RP, 2017 WL 6805045, at *4 (W.D. Tex. Oct. 25, 2017).

The Fifth Circuit certified the following questions to this Court:

> **(1) What timing standard should courts use to determine the existence and amount of any "unpaid commissions due" under the treble damages provision of TEX. BUS. & COM. CODE § 54.004(1)?**
>
> **(2) May a plaintiff recover reasonable attorney's fees and costs under TEX. BUS. & COM. CODE § 54.004(2), if the plaintiff does not receive a treble damages award under TEX. BUS. & COM. CODE § 54.004(1), and under what conditions?**

*JCB, Inc. v. Horsburgh & Scott Co.*, 912 F.3d 238, 241 (5th Cir. 2018). Writing for the panel, Judge Ho authored an opinion certifying these questions. As that opinion explained the treble-damages question, there is no dispute that the parties had "a contract under Section 54.002 relating to payment of a commission" and that Horsburgh "fail[ed] to comply with a provision of [that] contract." TEX. BUS & COM. CODE § 54.004. The dispute is over the date as of which the "unpaid commission due" should be calculated. If the amount of "unpaid commission due" should be calculated as of the date the commissions were originally due under the contract, Horsburgh may face treble damages of three times the $280,000 it initially failed to pay. If the correct date is the date suit was filed, Horsburgh may face treble damages of three times the amount it still owed at the time of filing. If the correct date is the time of trial or judgment, the district court was right.

3

There was no "unpaid commission" due by that time, so there was nothing left to treble. *JCB, Inc.*, 912 F.3d at 240. The panel also asked this Court to determine whether JCB can recover attorney's fees under section 54.004(2) even if it does not recover treble damages under section 54.004(1). *Id.* at 241.

In addition to the panel's opinion, Judges Duncan and Ho authored concurring opinions touching on the merits of the certified questions. Under Judge Duncan's reading of section 54.004, JCB can recover treble damages on the full amount it claims because the amount of "unpaid commission due" should be calculated as of the time the parties' contract made the commissions due. *Id.* at 244–46 (Duncan, J., concurring). According to Judge Duncan, section 54.004 incorporates section 54.003 when there is no written contract and section 54.002 when there is a written contract. *Id.* at 245. Section 54.003 provides a thirty-day deadline to pay the commission, and under section 54.002, the written contract provides the due date. In either case, in Judge Duncan's view, the amount of "unpaid commission due" for trebling purposes must be calculated as of the date the commission was initially due. *Id.* at 245–46. Under this reasoning, because Horsburgh and JCB had a written contract with a ten-day deadline, all commissions paid after that deadline are "unpaid commission due" under section 54.004 even though they have later been paid. *Id.* at 245.

Judge Duncan also addressed the second certified question. In his view, the correct answer is an easy "yes." "Section 54.004 contains no indication that it makes recovering attorney's fees dependent on recovering treble damages. Rather, the text makes recovering fees contingent only on the principal's breach of a contractual provision relating to commission payments under Section

4

54.002, or on the principal's failure to pay a commission as required by Section 54.003." *Id.* at 246 n.3.

Unlike Judge Duncan, Judge Ho found the statute unclear on the date to be used to calculate "unpaid commission due." *Id.* at 242 (Ho, J., concurring). Judge Ho observed that the statute could have specified, for example, treble damages for unpaid commission due "at the time the civil action is filed" or some other specified time, but the statute does not so specify. *Id.* Although he did not disagree with Judge Duncan's view of the statute, he noted its tension with the general common-law principle that contract damages are not set in stone at the time of breach but may be reduced or mitigated by the parties' later actions. *Id.* at 243. Judge Ho also noted the possible effect of TEX. CIV. PRAC. & REM. CODE § 41.004(a), which states that "exemplary damages may be awarded only if damages other than nominal damages are awarded." *Id.*

With these concurring opinions as helpful resources, we consider *de novo* the two statutory interpretation questions certified from the Fifth Circuit. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) ("We review matters of statutory construction *de novo*.").

## II. Discussion

### A. The Timing Standard for "Unpaid Commission Due"

The first certified question asks: "What timing standard should courts use to determine the existence and amount of any 'unpaid commissions due' under the treble damages provision of TEX. BUS. & COM. CODE § 54.004(1)?"

JCB argues that section 54.004 provides the time for determining the "unpaid commission due" by referencing section 54.002. Section 54.002 contains requirements for a "contract between a principal and a sales representative under which the sales representative is to solicit wholesale

5

orders within this state." TEX. BUS. & COM. CODE § 54.002(a). The parties do not dispute that they had a "contract under Section 54.002" which specified that commissions were due on the tenth of each month following Horsburgh's receipt of payment from its customer. According to JCB, the only relevant date for calculating "unpaid commission due" is the date the commissions were actually due under the contract. Nearly $280,000 in commissions allegedly were not paid by the contractually specified due date, and JCB contends that this entire amount is subject to trebling under section 54.004(1).

According to Horsburgh, there can only be "unpaid commission due" if the commission remains both "unpaid" and "due" at the time of trial. "Late-paid" is not the same as "unpaid," and these commissions were only late-paid. Further, the statute makes the defendant "*liable . . . for . . . three times the unpaid commission due.*" *Id.* § 54.004 (emphasis added). The usual time for calculating the amount of a defendant's liability is the time of trial, Horsburgh contends. And in order for there to be anything to treble at the time of trial, there must be unpaid commission at that time. If the "unpaid commission due" must be measured as of the time of trial, as Horsburgh contends, then the "unpaid commission due" is zero because Horsburgh has paid all allegedly owed commissions.

The Fifth Circuit understandably found it difficult to choose between these two plausible interpretations of section 54.004(1)'s text. The statute could be much clearer on the timing question. It could have specified, for example, that the defendant is liable for three times the unpaid commission due at the time of the contractual due date or "at the time the civil action is filed." *JCB, Inc.*, 912 F.3d at 242 (Ho, J., concurring). But the statute does not specify the moment

6

in time courts should look to when determining the existence and amount of "the unpaid commission due."

JCB argues that section 54.004 answers this timing question by referring to section 54.002, which contemplates a contractual due date for the commission. According to JCB, "If there is a Section 54.002 breach of a provision stating when commissions are to be paid, then it is the parties' agreement that determines when an 'unpaid commission' is 'due.'" *Id.* at 245–46 (Duncan, J., concurring). Certainly, the parties' agreement sets a due date for the commissions. No one disputes that all the commissions were "due" and "unpaid" on that date. But after Horsburgh paid the commissions with interest, they were neither unpaid nor due. Answering when the commissions first became unpaid and due does not tell us whether it matters, when a trial court is calculating damages, that the commissions are no longer either unpaid or due. *All* the disputed commissions were unpaid and due on the date of breach, *some* were unpaid and due when JCB filed suit, and *none* were unpaid and due at the time of summary judgment. To which of those three moments in time must courts look to determine the amount of "unpaid commission due" to be trebled? We find nothing in section 54.002 or section 54.003 answering that question. Section 54.002 provides requirements for the parties' written agreement, and section 54.003 provides a default rule in certain cases where no written agreement governs. Nothing in these provisions links the date of the breach to the calculation of treble damages.

As we read it, the statutory text does not answer the question. Nevertheless, we presume the legislature enacted chapter 54 "with full knowledge of the existing condition of the law and with reference to it." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 677 (Tex. 2007) (orig. proceeding). In particular, "we presume that the Legislature acted with knowledge of the common

7

law." *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999). Section 54.004 operates in the common-law realm of breach-of-contract actions, so where the statute is silent, we should consider the common law for guidance, assuming the legislature created a remedy unknown to the common law only where the words of the statute so provide. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) ("Where a statute creates a liability unknown to the common law, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.") (citation, internal quotation marks omitted).

As a general matter, it almost goes without saying that damages typically are calculated by the factfinder based on what is required to compensate the plaintiff *at the time of verdict or judgment*. The general pattern jury charge for breach of contract asks: "What sum of money, if any, *if paid now in cash*, would fairly and reasonably compensate [the plaintiff] for his damages . . . ?" COMMITTEE ON PATTERN JURY CHARGES OF STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 115.3 (2018) (emphasis added). The question for the factfinder is how much the defendant owes the plaintiff *today*. The question is typically not how much the defendant owed the plaintiff at some date in the past. Nor is it how much the defendant would have owed the plaintiff if the defendant had not already paid. The usual question for the factfinder is how much the defendant owes the plaintiff at the time the factfinder assesses liability. We find little in chapter 54 to suggest a departure from this default framework.

Under the common law and statutory law, damages for breach of contract are sometimes appropriately measured at the time of breach, but they can also increase or decrease after this point

8

in time.[3]  Under JCB's reading of the statute, however, contract damages are locked in and trebled at the time of breach, and there is nothing either party can do to mitigate or reduce the damages. This approach to damages is foreign to contract law, which requires mitigation of damages before trial and encourages defendants to pay what is owed in order to avoid litigation.[4]  As JCB would have it, its suit against Horsburgh isn't really a contract suit at all.  Its purpose is not to secure the benefit of JCB's bargain, to vindicate JCB's reliance interest, or to compensate JCB for consequential damages flowing from the breach.[5]  From the perspective of contract law, JCB has been made whole and has nothing else to litigate, besides perhaps attorney's fees and interest. Instead of a contract suit, JCB's understanding of its claim is more akin to a strict liability tort with

---

[3] The damages for a breach of contract are sometimes measured at the time of breach.  For example, in suits for breach of a sales contract, the Uniform Commercial Code provides that "the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price," together with certain incidental damages.  TEX. BUS. & COM. CODE § 2.708(a).  But such damages, even if measured at the time of breach, can increase or decrease after the breach.  For instance, damages decrease in cases where the plaintiff mitigates his damages after the breach, or should have done so.  "[T]he doctrine of mitigation of damages . . . prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff."  *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist.*, 908 S.W.2d 415, 426 (Tex. 1995).  "Where a party is entitled to the benefits of a contract and can save himself from damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions . . . ."  *Walker v. Salt Flat Water Co.*, 96 S.W.2d 231, 232 (Tex. 1936).  To quote a leading treatise on remedies, "The avoidable consequences rules, or rules for minimizing damages, are cardinal instruments of damages measurement. . . .  Minimizing damages rules apply in all kinds of cases, including contract, tort, and statutory claims."  1 DAN D. DOBBS, LAW OF REMEDIES 380 (2d ed. 1993) (footnotes omitted) (hereinafter Dobbs). Under these rules, "The defendant is entitled to a credit against liability for any consequential damages the plaintiff could have avoided or minimized by reasonable effort and expense, whether or not the plaintiff actually avoided or minimized such damages."  *Id.*  Judge Ho also gives mitigation as an example, along with others, where "courts typically do not treat damages as fixed at the moment of liability."  912 F.3d at 243 (Ho, J., concurring).  Conversely, damages can increase after the breach as consequential damages mount.  Dobbs at 305 (noting that consequential damages "may stretch infinitely in time"); *see also infra* note 5.

[4] *See supra* note 3 and *infra* note 10.

[5] *See Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007) (recognizing benefit-of-the-bargain and reliance measures of damages in contract cases); *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981) (recognizing that consequential damages are recoverable under Texas law for breach of contract).

statutorily defined damages that punish Horsburgh's breach. Yet even in tort cases, plaintiffs have an obligation to mitigate damages before trial, and defendants have the ability to reduce their liability by paying the claimed damages before trial. *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444, 449 (Tex. 1967) (recognizing in negligence suit that plaintiff's recovery excludes damages caused by plaintiff's failure to mitigate). Moreover, JCB's damages-free claim for a punitive recovery is not similar to how other treble-damages claims work. A DTPA plaintiff must prove its then-existing damages at trial in order to have something to treble.[6] Even DTPA plaintiffs hoping for treble damages have an obligation to mitigate their actual damages, thereby reducing their trebled amount. *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 858 (Tex. 1999) (holding "that a plaintiff in a DTPA case has the same duty to mitigate damages as in other cases"). JCB's approach, by contrast, would lock in the trebled damages at the moment of breach, making mitigation by either party impossible.

JCB points to no other cause of action in Texas law that operates the way it claims section 54.004 should operate. Of course, the legislature could enact such an unusual rule if it wanted to do so. But faced with statutory text that is amenable to two different temporal meanings, we will not adopt the one that is foreign to the way civil litigation normally operates.

We find no fault with the district court's common-sense approach. Section 54.004 required the district court to calculate "three times the unpaid commission due the sales representative."

---

[6] TEX. BUS. & COM. CODE § 17.50(b)(1) (providing for award of "the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages.").

10

TEX. BUS. & COM. CODE § 54.004(1). To do so, the court first had to calculate "the unpaid commission due the sales representative" before multiplying that number by three. A factfinder asked to determine "the unpaid commission due the sales representative," under a plain-meaning approach to that phrase, would naturally want to know how much commission has not yet been paid. Here, the answer is zero. There *used to be* unpaid commission due, but that does not mean there is any unpaid commission due *now*, when the factfinder is being asked to calculate the amount. And if the unpaid commission is zero, there is nothing to recover because three times zero is zero. This is how the district court appears to have reasoned. We agree with its straightforward, text-based approach: "the Act does not apply because it only applies to unpaid commissions, and all of the commissions owed [JCB] have been paid." *JCB, Inc. v. Horsburgh & Scott Co.*, No. 6:16-CV-146-RP, 2017 WL 6805045, at *4 (W.D. Tex. Oct. 25, 2017). Another federal district court likewise concluded that a Sales Representative Act provision substantially identical to section 54.004 "only applies in cases in which sales commissions were actually unpaid, not paid late." *Utility Prods. Co. v. USCO Power Equip. Corp.*, No. 3-06-CV-1948-M, 2007 WL 4440946, at *2 (N.D. Tex. Dec. 18, 2007).[7]

Absent legislative instruction to the contrary, a defendant who is "liable . . . for . . . the unpaid commission due the sales representative" is liable for just that—unpaid commissions that are due. He is not liable for amounts he has already paid prior to the determination of liability.[8]

---

[7] The court relied on a provision substantially identical to section 54.004 that was previously codified at section 35.84 of the Business and Commerce Code.

[8] Because we conclude that the text of chapter 54 does not support JCB's position, we need not consider whether the restrictions on punitive damages in chapter 41 of the Civil Practice and Remedies Code apply to treble damages claims under chapter 54.

Late-paid is not "unpaid," and late-paid amounts are no longer "due." We hold that the statute's silence on the timing of the calculation leaves in place the normal approach to damages, under which a factfinder charged with calculating "the unpaid commission due" asks how much commission is due and unpaid as of the factfinding, not how much commission was due and unpaid in the past.[9]

JCB contends this construction deprives chapter 54 of any real effect, since a sales agent can always sue under the common law for his commissions and obtain attorney's fees in a breach-of-contract suit under TEX. CIV. PRAC. & REM. CODE § 38.001. Courts "do not lightly presume that the Legislature may have done a useless act." *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998). But chapter 54 is by no means useless under our construction. If the defendant fails to pay all or part of the commissions prior to a judicial determination of the "unpaid commission due," he must pay treble damages. The threat of such punitive judgments provides added encouragement for principals to pay their sales representative the disputed commission.

JCB and its *amicus* supporters suggest that Horsburgh's understanding of the statute gives sales representatives insufficient recourse against capricious withholding of payments by manufacturers. They contend that the legislature surely did not mean to allow Horsburgh to escape punishment for its breach merely by paying its contractual obligation to JCB plus interest. But

---

[9] As a compromise of sorts, it has been suggested that section 54.004 should be read to require trebling of commissions that remain unpaid when suit is filed. Under that approach, some but not all of JCB's late commissions would be trebled. Neither side argues for this interpretation. It would be an odd result, as we have not discovered analogous statutes or common-law remedies that cut off the accrual of damages at the moment the suit is filed. Such an unusual time-of-filing rule for damages calculation would apply only if the legislature had specified it, and nothing in chapter 54 does so. "We have no right to engraft upon the statute any conditions or provisions not placed there by the legislature." *Iliff v. Iliff*, 339 S.W.3d 74, 80–81 (Tex. 2011).

that is the option all contract defendants have always had under the common law. *E.g.*, *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952) ("The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages."). If such an option encourages abusive breaches and exploitative conduct, then JCB's complaint is not just with the district court's interpretation of section 54.004. It is with all of Anglo-American contract law.

The vast majority of contracting parties have only the option of filing a normal breach-of-contract action when the need arises. As we interpret it, chapter 54 gives sales representatives a valuable advantage few other litigants enjoy. The threat of treble damages down the road is a heavy stick for the sales representative to wield against the principal, even if the blow cannot be struck until judgment. That the threat of the blow only forces quicker payment of what the sales representative is actually owed—as opposed to a punitive multiplier—hardly makes this arrangement unfair to the sales representative, who can recover everything he is owed and, as we explain below, the reasonable attorney's fees he expends to recover it. If, on the other hand, treble-damages liability irrevocably attaches the moment a breach occurs, the proverbial stick looks more like heavy artillery. Under JCB's approach, even if full payment is only a day late, nothing the defendant can later do to satisfy its contractual obligation will prevent the award of treble damages on the entire amount. Such a construction would deter the parties from settling their dispute without litigation or settling the dispute after suit is filed. By contrast, the threat of treble damages and attorney's fees at final judgment encourages manufacturers to settle these claims prior to suit

13

or before incurring the full expense of litigation, consistent with Texas law's strong preference for encouraging settlement of legal disputes.[10]

We disagree with JCB's suggestion that chapter 54 must be given a punitive interpretation because the common-law rules of contract litigation are unsuited for manufacturers and sales representatives. The legislature can make such a judgment, and to some extent it has done so. It has given sales representatives the extraordinary threat of trebled breach-of-contract damages to hold over manufacturers who do not pay commissions as agreed. JCB infers from the legislature's decision to give sales representatives this special right that it must have also intended to go even further by giving them an absolute right to treble damages that locks in at the moment of breach. The opposite inference is stronger. The legislature has already given sales representatives an advantage few parties enjoy. Nothing in the statutory text indicates that this advantage must be applied in a way that is alien to how the law operates outside of chapter 54.

The foregoing discussion of policy concerns does not bear directly on the statutory-interpretation question before the Court. "Our role here . . . is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results . . . ." *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003). Our job is to apply the statutory text as written, not as we would have written it. *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017) ("The text is the alpha and the omega of the interpretive process."). The parties,

---

[10] *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008) (Settlement agreements are "highly favored by the law."); *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995) ("Settlements are favored because they avoid the uncertainties regarding the outcome of litigation, and the often exorbitant amounts of time and money to prosecute or defend claims at trial."); TEX. CIV. PRAC. & REM. CODE § 154.002 ("It is the policy of this state to encourage the peaceable resolution of disputes . . . and the early settlement of pending litigation through voluntary settlement procedures.").

however, rely heavily on policy arguments, so we have addressed them in order to dispel the misperception that the interpretation of chapter 54 adopted herein and previously adopted by two federal district courts will unfairly rob sales representatives of their negotiating power, render chapter 54 a nullity, or lead to absurd results.

For these reasons, we answer the first certified question from the Fifth Circuit by holding that the time for determining the existence and amount of "unpaid commission due" under section 54.001(1) is the time the jury or trial court determines the liability of the defendant, whether at trial or through another dispositive trial-court process such as a summary judgment.[11]

## B. Attorney's Fees and Costs

The second certified question asks: "May a plaintiff recover reasonable attorney's fees and costs under TEX. BUS. & COM. CODE § 54.004(2), if the plaintiff does not receive a treble-damages award under TEX. BUS. & COM. CODE § 54.004(1), and under what conditions?"

JCB argues as follows. Under the plain language of section 54.004, a principal who "fails to comply with a provision of a contract under Section 54.002" is liable for the sales representative's reasonable attorney's fees. Horsburgh failed to comply with the parties' agreement when it did not pay nearly $280,000 in commissions when due. As a result, Horsburgh is liable for JCB's reasonable attorney's fees. That ends the inquiry. The statute does not require an award of trebled unpaid commissions before the plaintiff can recover its attorney's fees. The two recoveries are provided independently of one another by subsections 54.004(1) and 54.004(2).

---

[11] *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988) (holding that a summary judgment proceeding is a trial for purposes of TEX. R. CIV. P. 63); *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 344 (Tex. App.—Dallas 2014, no pet.) ("Legally, we consider a summary judgment proceeding to be a trial within the meaning of the rules of civil procedure.").

Horsburgh argues that, without an award of trebled unpaid commissions, JCB is not a "prevailing party" and therefore cannot recover attorney's fees. Properly construed, according to Horsburgh, section 54.004 requires actual damages as a prerequisite for attorney's fees. Further, fees must be "reasonable" under section 54.004(2), and awarding attorney's fees in the absence of actual damages is unreasonable.

JCB has the better interpretation of the attorney-fees provision. Under the plain language of section 54.004, JCB's entitlement to attorney's fees is triggered by Horsburgh's breach, not by JCB's success in litigation. The statute says, "A principal who fails to comply with a provision of a contract . . . relating to payment of a commission . . . is liable to the sales representative . . . for . . . reasonable attorney's fees and costs." TEX. BUS & COM. CODE § 54.004(2). Horsburgh failed to comply with the commission contract. It therefore "is liable to" JCB for "reasonable attorney's fees." That is what the statute says, so that is what it means. The only textual limitation is that the fees must be "reasonable." Unlike the treble-damages provision, the attorney's-fees provision does not require proof of an "unpaid commission due" or any other showing besides a breach of the commission agreement. Set out in a separate subsection, the fees provision is textually and structurally independent of the treble-damages provision. Section 54.004 does not make an award of attorney's fees dependent on an award of treble damages.[12]

---

[12] As noted, Judge Duncan suggested this reading of the statute. In his view, "Section 54.004 contains no indication that it makes recovering fees *dependent* on recovering treble damages. Rather the text makes recovering fees contingent *only* on the principal's breach of a contractual provision relating to commission payments under Section 54.002, or on the principal's failure to pay a commission as required by Section 54.003." 912 F.3d at 246 n.3 (Duncan, J., concurring). We agree.

16

Horsburgh argues that fees should be denied in their entirety because JCB's claim for treble damages failed, meaning that JCB was not the "prevailing party." Under the American Rule, attorney's fees are not awarded unless a statute or contract authorizes them. *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding). Any award of fees is limited by the wording of the statute or contract that creates an exception to the American Rule.[13] The cases Horsburgh relies on, which impose a "prevailing party" requirement, are based on statutes expressly authorizing fees for the prevailing party or the party who brought a "valid" claim. For example, *Southwestern Bell Mobile Systems, Inc. v. Franco*, 971 S.W.2d 52 (Tex. 1998), interpreted a section of the Labor Code providing attorney's fees to the "prevailing party." *Id.* at 55. Other well-known attorney-fees statutes expressly require the plaintiff to win the case before obtaining fees. The DTPA, for instance, says fees are available to "consumer[s] who *prevail*." TEX. BUS & COM. CODE § 17.50(d). Similarly, we analyzed "prevailing party" status of a party seeking fees in *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650 (Tex. 2009), because the contract at issue provided fees to the "prevailing party" in an action to enforce the contract. *Id.* at 652. In this case, by contrast, the statute contains no prevailing-party requirement, and we decline to imply one.

Reasonableness is nevertheless a very real limitation on chapter 54's otherwise unbounded grant of attorney's fees and costs to the sales representative. Horsburgh plausibly argues that, although the statute contains no prevailing-party requirement, awarding any fees to the losing party

___

[13] *See MBM Fin. Corp. v. Woodlands Operating Co.,* 292 S.W.3d 660, 669 (Tex. 2009) ("Texas has long followed the "American Rule" prohibiting fee awards unless specifically provided by contract or statute."); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006) ("For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract.").

17

would always be unreasonable. But as we understand the record, even though the district court granted summary judgment for Horsburgh, it would be incomplete to call JCB the losing party without qualifying that statement. JCB lost in its bid to add treble damages to its fully paid commissions, and we cannot envision a scenario in which fees expended in pursuit of JCB's invalid theory of treble-damages liability could ever be reasonable. However, the record suggests that JCB's lawsuit prompted Horsburgh to pay the remaining unpaid commission. According to Horsburgh, after JCB sued in May 2016, Horsburgh fully paid approximately $90,000 in late commissions by August 2016, several months after JCB filed suit. Attorney's fees spent pursuing that amount may be reasonable, assuming they satisfy other legal and factual standards applicable to reasonable fee awards.[14] On the other hand, attorney's fees spent continuing to press for treble damages after the defendant paid all commissions due plus interest are likely not reasonable, because at that point the case should have been finished.[15]

In any event, JCB is eligible for an award of reasonable attorney's fees and costs by virtue of Horsburgh's breach and the plain language of section 54.004. While the discussion above offers some analysis of the reasonableness of JCB's potential fee award, whether the fees JCB seeks are

---

[14] The United States Supreme Court rejected the "catalyst theory" for an award of attorney's fees in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001). Under the catalyst theory, a plaintiff could be a prevailing party entitled to fees even if his lawsuit did not result in a judgment in his favor if his lawsuit nevertheless "brought about a voluntary change in the defendant's conduct." *Id.* at 600. The Court held that this theory was not a permissible basis for an award of attorney's fees. *Id.* at 600, 610. As in most of our attorney-fees decisions, the Court in *Buckhannon* addressed the availability of fees under statutes that allow a fee award to the "prevailing party." *Id.* at 600–01. The Court based its decision on "the clear meaning of 'prevailing party' in the fee-shifting statutes." *Id.* at 610. Here, by contrast, the statutory entitlement to fees is triggered by the principal's breach, not by the plaintiff's success in litigation. Our holding is limited to the peculiar terms of chapter 54. We do not suggest that fee-shifting statutes containing prevailing party or analogous requirements are satisfied when the lawsuit merely coerces the defendant to change its conduct prior to judgment.

[15] Our recent decision in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, ___ S.W.3d ___ (Tex. 2019), describes the current legal standards for awards of attorney's fees in Texas courts.

reasonable is ultimately a question to be resolved in the district court after consideration of all the relevant factors governing awards of attorney's fees.

We answer the second certified question as follows: a plaintiff may recover attorney's fees and costs under TEX. BUS. & COM. CODE § 54.004(2) even if the plaintiff does not receive treble damages, if the factfinder determines that the fees and costs were reasonably incurred under the circumstances. Finally, reasonable costs, like reasonable attorney's fees, are available under section 54.004(2), and their availability does not depend on an award of treble damages under section 54.004(1).

 

 

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** June 7, 2019