# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 25, 2021

Lyle W. Cayce
Clerk

No. 19-20489

Maxim Crane Works, L.P.,

*Plaintiff—Appellant*,

*versus*

Zurich American Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:18-CV-3667

Before Smith, Ho, and Oldham, *Circuit Judges*.

Per Curiam:

We withdraw the court's prior opinion of Aug. 20, 2021 and substitute the following opinion.

This is an insurance coverage dispute involving an intricate web of insurance contracts arising out of a construction project involving multiple different businesses. But the legal issue presented in this case is simply this: Who counts as an "employee" under the Texas Anti-Indemnity Act ("TAIA")? *See* Tex. Ins. Code §§ 151.102, 151.103. Specifically, if a person is employed by a general contractor, is that person also considered an

"employee" of the subcontractor?  One might think, under a traditional understanding of the term "employee," the natural answer to this question must be "no."  But the TAIA does not define the term "employee" for these purposes; there are no Texas cases interpreting the TAIA; and at least one Texas court has answered the question "yes," at least as the term "employee" has been used in the Texas Workers' Compensation Act.

We are advised that the answer to this question of statutory interpretation may affect countless Texas construction contracts.  But we lack sufficient guidance from Texas courts to determine with any confidence how the Supreme Court of Texas would answer this question.  "To best serve the people of Texas, th[i]s[] question[] should be answered by the only court that can issue a precedential ruling that will benefit all future litigants, whether in state or federal court."  *JCB, Inc. v. Horsburgh & Scott Co.*, 912 F.3d 238, 239 (5th Cir. 2018).  Accordingly, we certify this question to the Supreme Court of Texas.

Before we do so, we address, and reject, the contention that the district court should have dismissed this case for lack of standing, rather than enter judgment on the merits for the insurer.  In doing so, we explain why there was no need for the insurer to file a cross-appeal in order to raise the issue of standing on appeal.

## I.

In 2013, Skanska USA, Inc. ("Skanska"), a general contractor, hired Berkel & Co. Contractors ("Berkel") as a subcontractor on a large construction project in Houston.  Skanska required all of its subcontractors, including Berkel, to participate in a contractor-controlled insurance program ("CCIP") as a condition of working on the job.  The CCIP provided for general commercial liability insurance as well as workers' compensation coverage.

Berkel leased a Link-Belt Crawler Crane from Maxim Crane Works, L.P., for use on the project. The lease was a "Bare Rental Agreement," meaning that Berkel agreed to be solely responsible for operating and maintaining the crane while it was in Berkel's possession. The lease also required Berkel to name Maxim as an additional insured under Berkel's commercial general liability insurance policy ("Berkel CGL Policy"), which was issued by Zurich American Insurance Company ("Zurich"). Because Maxim was only a leasing partner, however, it was not subject to Skanska's CCIP requirement or included in the program.

On September 30, 2013, a Berkel employee operating the crane caused the boom to collapse, crushing the leg of Tyler Lee, a project supervisor and Skanska employee on site. Lee was awarded workers' compensation benefits under the CCIP. His leg was ultimately amputated.

In 2014, Lee filed suit against Berkel, Maxim, and others in Texas state court for injuries based on negligence. When the state court litigation commenced, Maxim sought coverage from Zurich as an additional insured under the Berkel CGL Policy. Based in part on its reading of the TAIA, Zurich denied coverage. Maxim cross-claimed against Berkel for breach of contract on the theory that Berkel was required to defend Maxim and indemnify or contribute to any of Maxim's losses.

In 2015, a jury awarded Lee $35.4 million in actual damages, allocating 90% of the fault to Berkel and 10% to Maxim. Maxim settled with Lee for $3.4 million. Maxim's independent insurance policy ("Maxim CGL Policy") also happened to be purchased from Zurich. Pursuant to that policy, Zurich initially paid the entire amount of both the settlement and the associated legal fees. However, pursuant to Maxim's deductible, Zurich billed back $3 million of the settlement and $824,839.38 in legal fees, which Maxim reimbursed to Zurich.

Following the jury verdict, Maxim moved for entry of judgment on its cross-claim against Berkel. The court denied Maxim's motion.

Berkel appealed the jury verdict. In 2018, the state court of appeals reversed judgment against Berkel, finding that because Berkel and Skanska were both covered under the CCIP, Lee was Berkel's "statutory co-employee" for purposes of the Texas Workers' Compensation Act ("TWCA"). *Berkel & Co. Contractors, Inc. v. Lee*, 543 S.W.3d 288, 296 (Tex. App.—Houston [14th Dist.] 2018, pet. denied), *reh'g granted in part* (Jan. 23, 2018), *reh'g denied* (Mar. 6, 2018). Consequently, it held Berkel could not be sued in tort because the exclusive remedy for workplace injuries against employers was workers' compensation.

Maxim separately appealed the state court's judgment on its cross-claim against Berkel. The court of appeals affirmed, holding Maxim had not preserved arguments relating to the applicability of the TAIA. The Texas Supreme Court denied further review.

In April 2018, Maxim made another demand on Zurich to reimburse Maxim for the costs of the legal defense and the judgment. Zurich again denied coverage.

In September 2018, Maxim filed suit in state court against Zurich seeking declaratory relief and contract damages. Specifically, Maxim argued Zurich had improperly denied it coverage as an additional insured under Berkel's CGL Policy. Zurich removed to federal court on diversity jurisdiction grounds. As only legal issues were in dispute, the parties agreed to a joint stipulation of facts and to file cross-motions for summary judgment. In 2019, the district court granted Zurich's motion for summary judgment and denied Maxim's motion for summary judgment. The district court concluded: (1) Maxim had standing to pursue its claim, and (2) the TAIA precluded Maxim from coverage as an additional insured. Maxim appealed

and Zurich cross-appealed, with Maxim arguing the TAIA did not bar coverage and Zurich arguing Maxim did not have standing. After oral argument, Zurich filed an unopposed motion to dismiss its cross appeal, which we granted. Maxim has also filed an opposed motion to stay proceedings in this Court and to certify the TAIA question to the Texas Supreme Court.

## II.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where, as here, "the only issue[s] before the court [are] [] pure question[s] of law," "summary judgment is appropriate." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

The parties agreed to a joint stipulation of facts, and the two issues for resolution on appeal are pure questions of law: (1) does Maxim have standing, and (2) does the employee exception under the TAIA preclude Maxim from seeking coverage as an additional insured? Texas law governs the latter question.

## III.

Before turning to our standing analysis, we first address a few procedural issues. During oral argument, we inquired as to whether Zurich's cross-appeal was proper or necessary. After oral argument, Zurich moved to dismiss its cross-appeal. We previously granted that motion and now explain why.

In its motion to dismiss its cross-appeal, Zurich requested that "the grounds therein be considered alternate grounds for affirmance of the District Court's judgment or preserved grounds to address in the event the Court reverses the district court's judgment."

Zurich's motion to dismiss is well taken. "[A]rguments that support the judgment as entered can be made without a cross-appeal." 15A C. Wright & A. Miller Federal Practice and Procedure § 3904 (2d ed. 2021). And unnecessary cross-appeals should generally be avoided. "Appeal procedure is streamlined in desirable ways if arguments to support the judgment are made in brief without filing an unnecessary cross-appeal. Cross-appeal procedure complicates briefing schedules and the number and length of the briefs in ways that may generate more confusion than enlightenment." *Id.*

As discussed below, Zurich's "standing" argument is based not on the lack of an Article III injury, but on the absence of contractual standing. That is, Zurich argues that Maxim does not have a contractual right to bring this suit. And such questions do not go to the court's subject matter jurisdiction, but are instead part of the inquiry into the merits of a particular claim. *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). "[U]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Likewise, "[c]ontractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020). "Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract." *Id.* So where, as here, a case turns on the validity of an assignment of contractual rights, that is not "a

question of Article III standing" but "one of contractual standing." *Id.* The latter would require affirmance of the judgment, just like all of Zurich's other arguments in defense of the judgment below.[1]

Accordingly, Zurich was not required to file a cross-appeal here. We therefore dismissed the cross-appeal and now turn to Zurich's standing argument.

## IV.

Zurich argues that Maxim lacks "standing" to bring its claim. We disagree.

Zurich does not deny that Maxim alleges an Article III injury. But Zurich claims that Maxim has no cause of action pursuant to "the general prohibition on a litigant's raising another person's legal rights." *Lexmark*, 572 U.S. at 126. As *Lexmark* makes clear, this argument implicates the merits of Maxim's right to sue—not its Article III standing to invoke the federal judicial power. *See id.* at 125–27.

In this case, Maxim seeks recovery under Berkel's CGL Policy. Zurich contends that, because Maxim's own CGL Policy with Zurich assigns

---

[1] Moreover, even if Zurich were to challenge Article III standing—which it does not—there would still be no need to cross-appeal. To be sure, if Zurich were to successfully challenge Article III standing on appeal, we would not affirm the judgment below—rather, we would vacate the judgment and remand with instructions to dismiss the case for lack of jurisdiction. That's because a judgment based on lack of Article III standing is different from a judgment on the merits for the defendant. "[W]hen this court dismisses a case due to failure of one particular jurisdictional element, and the party later cures that jurisdictional defect and brings a new suit, res judicata does not bar the second suit." *Lopez v. Pompeo*, 923 F.3d 444, 447 (5th Cir. 2019). *See also California v. Texas*, 141 S. Ct. 2104, 2135 n.9 (2021) (Alito, J., dissenting) (same). That being said, a cross-appeal "is not necessary to challenge the subject-matter jurisdiction of the district court, under the well-established rule that both district court and appellate courts are obliged to raise such questions on their own initiative." 15A WRIGHT & MILLER § 3904.

all of its rights to Zurich, Maxim has no remaining cognizable legal interest to invoke. The provision of the Maxim CGL Policy that Zurich invokes reads as follows:

> We [Zurich] have your rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any Deductible Amount from anyone liable for the injury or damages. . . .

Maxim seeks funds that have already been "reimbursed." Zurich nevertheless argues that any "reimbursed" funds must have, by definition, once been "reimbursable." Because Zurich has the right to recover "sums that are reimbursable" and "any Deductible Amount" from any liable party, it argues that Maxim has assigned away the very recovery it seeks to Zurich.

But the policy language expressly distinguishes between sums that are "reimbursable" (future tense) versus those that are already "reimbursed" (past tense). The assignment of rights provision grants to Zurich rights only as to future "reimbursable" amounts—not *reimbursed* ones. *See Bowersox Truck Sales & Serv., Inc. v. Harco Nat'l Ins. Co.*, 209 F.3d 273, 279–80 (3d Cir. 2000) (refusing to rewrite a release agreement to include the future tense when only the present tense was used). Maxim has already reimbursed Zurich, so no amount remains "reimbursable" under the provision. Moreover, the policy elsewhere expressly refers to "reimbursable and reimbursed" amounts, suggesting that the parties recognized the difference between the two terms, yet only assigned to Zurich the right to the former. *See Clarke v. MMG Ins. Co.*, 100 A.3d 271, 276 (Pa. Super. Ct. 2014) (disfavoring surplusage).[2]

---

[2] Zurich relies heavily on *Zurich American Insurance Company v. Wausau Business Insurance Company*, 2018 WL 4684112 (S.D.N.Y. Sept. 28, 2018), as persuasive authority. But *Wausau* is distinguishable. That case did not confront the factual situation here where

No. 19-20489

Finally, even if the language is ambiguous as to already reimbursed sums, ordinary contract principles suggest that we would construe the policy against the drafter (Zurich) and in favor of the insured (Maxim). *See Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6 (Pa. 2015) ("Consistent with ordinary principles of contract interpretation, where a policy provision is ambiguous, it is generally construed against the insurance company as the drafter of the agreement."); *Eichelberger v. Warner*, 434 A.2d 747, 749 (Pa. Super. Ct. 1981) ("Exceptions to an insurer's general liability are accordingly to be interpreted narrowly against the insurer."). (The parties agree that Pennsylvania law governs the Maxim Policy.)

In sum, the Maxim Policy does not assign Maxim's rights to Zurich, so we conclude that Maxim can pursue this claim against Zurich under the Berkel Policy.

## V.

Turning at last to the merits, the parties agree that this appeal turns on a single question of statutory interpretation—whether the employee exception under the TAIA precludes Maxim from coverage as an additional insured. The district court concluded that the TAIA prevents Maxim from recovering under Berkel's CGL Policy.

The TAIA generally voids indemnity coverage in construction contracts, with certain exceptions:

> Except as provided by Section 151.103, a provision in a construction contract, or in an agreement collateral to or affecting a construction contract, is void and unenforceable as against public policy to the extent that it requires an indemnitor

---

an insured had already reimbursed the insurer for all amounts due and was seeking recovery after the fact, as all recovery there was prospective.

> to indemnify, hold harmless, or defend a party, including a third party, against a claim caused by the negligence or fault . . . of the indemnitee . . . .

TEX. INS. CODE § 151.102. The anti-indemnity provision applies equally to additional insured coverage, which is at issue in this case. *Id.* § 151.104.

But Maxim claims that it is covered by an exception under the TAIA concerning employees. Under the statute, "Section 151.102 does not apply to a provision in a construction contract that requires a person to indemnify . . . against a claim for the bodily injury or death of *an employee of the indemnitor, its agent, or its subcontractor of any tier*." *Id.* § 151.103 (emphasis added). Simply put, additional insured coverage is enforceable, and not void, if the claim runs against the policyholder's employee.

Neither party suggests that Maxim was liable for Berkel's negligence, so both parties agree that the TAIA voids Berkel's CGL Policy from covering Maxim's costs unless the § 151.103 "employee exception" applies here.

Maxim argues that Berkel was effectively Lee's "co-employer," so the employee exception applies. The logic goes like this: Maxim was covered by the Berkel CGL Policy, which insured injuries to Berkel's employees caused by Maxim's negligence. In the *Berkel v. Lee* suit, Berkel was deemed to be Lee's "co-employee" under the TWCA. Next, "co-employee" and "co-employer" are interchangeable terms, meaning that Lee is "functionally" Berkel's employee. And if Lee is Berkel's employee, then the exception permitting additional insured coverage for employees applies and Maxim can claim coverage under Berkel's CGL Policy. Thus, this case turns on the meaning of "employee" under the TAIA.

Unlike the TWCA, the TAIA contains no statutory definition of the term "employee." Under the ordinary meaning of the term, we would not treat Lee as Berkel's employee. "[U]ndefined terms in a statute are typically

given their ordinary meaning, [unless] a different or more precise definition is apparent from the term's use in the context of the statute." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Accordingly, Zurich argues that Lee was an employee of Skanska, not Berkel. Zurich also emphasizes that the primary means for determining the legislature's intent is by reading the statutory text, not by considering broad policy purposes. *Id.*

The parties have found no Texas case law construing the TAIA or its employee exception, nor have we found any.

For its part, Maxim asks us to view the case law interpreting the TWCA as relevant and persuasive in resolving the question before us—in particular, the determination by the state appellate court that Berkel was a "co-employee" of Lee under the TWCA. *Berkel,* 543 S.W.3d at 296. Maxim argues that, if Lee and Berkel are indeed "co-employees," then Berkel was "functionally equivalent to being the injured worker's [i.e. Lee's] employer." And if that is so, then the employee exception under the TAIA applies, and Maxim can properly be designated an additional insured under Berkel's CGL Policy.

To make the jump from "co-employee" to "co-employer," Maxim invokes *Austin Bridge & Road, LP v. Suarez*, 556 S.W.3d 363 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). But Zurich responds that the facts of *Austin Bridge* are wholly distinguishable from the current case. Additionally, the statutory definition of "employee" used in the TWCA that Maxim relies on is relevant "only for purposes of the workers' compensation laws of this state," as the statute makes clear. Tex. Lab. Code § 406.123(e). Maxim argues that courts should "consider the circumstances of this case and the legislative intent of the TAIA, which plainly anticipated broad indemnification and additional insured coverage for injuries to an indemnitor's employees." *See* Tex. Gov't Code § 312.005 ("In

interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."). Here, Maxim was left holding the bag only because the Fourteenth Court read the TWCA to make Lee and Berkel "statutory co-employees," so Maxim contends, it makes sense to carry that meaning over to the TAIA's employee exception. Doing so will ensure that "the TAIA and TWCA . . . work hand-in-glove." In support, Maxim cites language from the TAIA that the act "does not affect . . . the benefits and protections under the workers' compensation laws of this state," to show that the two statutes are indeed linked. TEX. INS. CODE § 151.105(5).

The district court sided with Zurich, holding that "the statutory language and the Texas cases interpreting [the TWCA] show that the terms 'coemployer' and 'coemployee' are not interchangeable and that the court cannot deem Berkel to be Lee's coemployer." And even if Maxim were able to establish that Berkel was indeed Lee's functional employer, it is not clear whether an employee of a "co-employer" under the TWCA is also an employee under the TAIA. Indeed, other Texas statutes set different statutory definitions of "employee," so it is far from clear that the TWCA definition necessarily applies in the TAIA context. *See*, *e.g.*, TEX. CIV. PRAC. & REM. CODE § 101.001 (defining "employee"); TEX. HEALTH & SAFETY CODE § 312.007(a) (same).

\* \* \*

We have the discretion to certify questions of law to state courts of last resort. *See*, *e.g.*, *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015). On occasion, we have considered the following factors when deciding whether to certify:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of

comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*JCB*, 912 F.3d at 241 (quoting cases).

Certification is advisable here. First, as discussed, this case involves open legal questions regarding the interpretation of the TAIA. That act contains no statutory definition of employee, and it is unclear whether we should seek guidance from the definitions provided by the TWCA or some other Texas statute. Nor have we been able to identify any meaningful authority from any Texas state court. Second, Maxim advises that, considering the prevalence of CCIPs like the one at issue here, indemnity issues under the TAIA and its employee exception "will likely continue to arise with regularity" out of construction-related personal injury suits.

## VI.

We hereby certify the following question of law to the Supreme Court of Texas:

> Whether the employee exception to the TAIA, Texas Insurance Code § 151.103, allows additional insured coverage when an injured worker brings a personal injury claim against the additional insured (indemnitee), and the worker and the indemnitee are deemed "co-employees" of the indemnitor for purposes of the TWCA.

We do not purport to limit the Supreme Court of Texas to the precise form or scope of the question certified.