# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2022

Lyle W. Cayce
Clerk

No. 20-40411

Domain Protection, L.L.C.,

*Plaintiff—Appellant*,

Gary N. Schepps,

*Appellant*,

*versus*

Sea Wasp, L.L.C.,

*Defendant—Appellee*,

CONSOLIDATED WITH

20-40518

Domain Protection, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Sea Wasp, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:18-CV-792

Before ELROD, SOUTHWICK, and COSTA, *Circuit Judges*.

GREGG COSTA, *Circuit Judge*:

For physical addresses, location is paramount. As the quip goes, the three most important things about real estate are location, location, location.

The same is true for internet addresses. The right domain name can draw traffic to a site, making certain names extremely valuable. Consider these astounding prices for some Fifth Avenues of e-commerce: "business.com" sold for $345 million, "LasVegas.com" sold for $90 million, and "carinsurance.com" went for almost $50 million.[1] The potential value of domain names has led to more than a decade of litigation over the ownership of the ones at issue in this case.

This latest chapter in the dispute started well for the plaintiff. It obtained some preliminary relief and then a summary judgment ruling that the defendant had violated state and federal law. But it did not end well; a jury awarded no damages. So the plaintiff appeals seeking some remedy

---

[1] *Business.com Sold to RH Donnelley; Beating DJ, NYT and News Corp; Price $345 Million*, FORBES (July 26, 2007, 1:47 pm), https://www.forbes.com/2007/07/26/businesscom-donneley-advertising-tech-cx_pco_0726paidcontent.html?sh=2879669777f9; Michael Gargiulo, *Exact Match Domains: How to Price These High-Value Assets*, FORBES (Aug. 7, 2018, 8:30 am), https://www.forbes.com/sites/forbestechcouncil/2018/08/07/exact-match-domains-how-to-price-these-high-value-assets/?sh=51f131027437; Michael Gargiulo, *What Exactly Is a Premium Domain Name*, FORBES (July 6, 2021, 9:10 am), https://www.forbes.com/sites/forbestechcouncil/2021/07/06/what-exactly-is-a-premium-domain-name/?sh=5bf33d483050.

while the defendant challenges the liability rulings. Given the mixed rulings, it is no surprise that both sides also want attorney's fees. To top things off, the district court sanctioned the plaintiff's lawyer for misconduct. We end up affirming the judgment except for the sanctions. And with three appeals arising from one lawsuit—one from the plaintiff, one from the defendant, one from the sanctioned lawyer—this case allows us to clarify when arguments should be made in responsive briefing and when they require a cross-appeal.

I.

When you type a domain name into your internet browser—say ca5.uscourts.gov for the multitudes wanting to read this opinion—and press enter, the computer brings you to the Fifth Circuit homepage. While this can happen in a flash, a lot is going on behind the scenes.

Basically, it works like this: Registered domain names are listed in a giant database, called a registry. In that registry, each domain name is matched with a "nameserver." When a computer user types a domain name into a browser, the registry connects it to the nameserver for that domain name. The nameserver then sends back to the computer the numerical internet protocol (IP) address for the domain name. One IP address for the Fifth Circuit website is 23.221.222.250. Using that address, the computer connects directly with the desired website. Once that happens, the website appears on the computer.

Nameservers play an important part in this case. For now, the important thing to understand is that their function—translating a desired domain name into the associated IP address—is a key link in the sequence that connects users to websites. As a result, someone with access to a nameserver can modify it to direct internet traffic (and therefore ad revenue) to a different website than the one actually associated with the domain name.

As for the parties before us, defendant Sea Wasp is an accredited registrar of internet domain names. A customer pays Sea Wasp to register

available domain names. Plaintiff Domain Protection is one such customer; it had tens of thousands of domain names registered through Sea Wasp.

A few months into the parties' relationship, Sea Wasp learned there was litigation over whether Domain Protection had a right to those domain names. In fact, the domain names had been at the center of ownership controversy for years before our parties entered the picture.

These earlier disputes help explain how we got to where we are today. Back in 2009, litigation over these domain names began after a party breached a contract. A court-approved settlement ultimately divided the domain names between two entities. One of those entities was Quantec, LLC, owned by Jeffrey Baron.

Baron's ownership of the domain names was short-lived. After Baron failed to pay his attorneys, a court ordered his assets—including the domain names owned by Quantec—into receivership. Baron appealed. *See Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012). While Baron's appeal was pending, appellant Gary Schepps—one of Baron's lawyers who was not getting paid—helped his law school friend Lisa Katz get a job at Quantec. She too started to complain that she was not getting paid.

We reversed and remanded the receivership decision. *Id.* at 308–11. Still, more obstacles stood between Baron and the domain names. After the case was remanded, the district court ordered the receiver to return Quantec's assets—including the domain names—to Katz. She was to hold the domain names as Quantec's agent pending the resolution of various disputes.

But that is not what happened. Instead, Schepps and Katz formed Domain Protection as a "liquidation vehicle" to sell the domain names to pay themselves the attorney's fees and backpay they were owed. Katz was installed as the manager of Domain Protection and Schepps acted as the

lawyer. Katz soon assigned Quantec's domain names to Domain Protection with the intent to liquidate them.

After the assignment, Quantec and others sued Katz to recover the domain names. In the wake of the lawsuit, a registrar named Fabulous (with whom the domain names were registered at the time) "locked" the domain names to prevent them from being sold or redirected to a different nameserver.[2] This lock remained in place for the next few years.

Enter at last Sea Wasp. In 2017, unaware of the ongoing ownership dispute, Sea Wasp purchased Fabulous' assets. At that time, the domain names were still locked. But at some point in early 2018, Katz unlocked them and changed the nameservers to redirect internet traffic (and ad revenue). When Sea Wasp realized the nameservers had been changed, it restored the original ones and relocked the domain names. The lock prevented Domain Protection from transferring, selling, or modifying the domain names pending the resolution of the ownership dispute.

In response, Domain Protection filed this lawsuit. It alleged that Sea Wasp had violated Title II of the Electronic Communications Privacy Act, also known as the Stored Communications Act, and the Texas Theft Liability Act. It also brought common-law claims for conversion, civil conspiracy, and tortious interference with contracts. Domain Protection sought preliminary injunctive relief, recovery of its property (control over the domain names), actual damages, and statutory damages.

The district court granted Domain Protection preliminary injunctive relief requiring Sea Wasp to unlock the domain names. The district court

---

[2] The Internet Corporation for Assigned Names and Numbers permits a registrar to deny holders the ability to transfer domain names when there is a reasonable dispute involving the identity of the holder. And a "lock" on a domain name refers to a system setting that a registrar can use to prevent a holder from accessing and altering the registration record for the domain name.

eventually granted Domain Protection summary judgment on liability for all its claims except tortious interference.

But at a trial on damages, a jury did not award Domain Protection anything. After the trial loss, Domain Protection unsuccessfully sought statutory damages under the Stored Communications Act.

The district court's final judgment ordered that Domain Protection take nothing and dismissed the case with prejudice. The court also refused to award either side attorney's fees. Earlier, however, the court had sanctioned Schepps $7,110.50 for deceiving the court about his financial interest in Domain Protection.

These rulings generated three appeals. Domain Protection seeks the following relief: a return of property for its conversion claim and statutory damages and attorney's fees on its Stored Communications Act claim. In its cross-appeal, Sea Wasp argues that Domain Protection lacked Article III standing to bring this suit in the first place, that the court erred in ruling that Sea Wasp violated federal and state law, and that it is entitled to attorney's fees for ultimately prevailing on the Texas Theft Liability Act claim. In addition to the parties' appeals, attorney Schepps challenges the sanctions.

## II.

We start with Sea Wasp's claim that the district court lacked jurisdiction over this lawsuit.[3] That is so, according to Sea Wasp, because Domain Protection did not suffer an injury sufficient to give it Article III standing to bring this suit. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992).

---

[3] Sea Wasp raises this jurisdictional challenge in its cross-appeal. But a "cross-appeal . . . is not necessary to challenge the subject-matter jurisdiction of the district court, under the well-established rule that both district court[s] and appellate courts are obliged to raise such questions on their own initiatives." 15A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3904 (3d ed. 2021). This argument thus should have been raised in the appellee's brief. We discuss more below about the limited role of cross-appeals.

Its argument is essentially as follows: Because Katz did not have authority to assign the domain names to Domain Protection, Domain Protection is not the rightful holder of them and thus cannot claim it was injured by something that happened to the domain names.

Sea Wasp's argument does not go to Article III standing. By arguing that the assignment between Katz and Domain Protection was invalid, Sea Wasp is asserting that Domain Protection has no contractual right to the domain names or to claims arising out of them. Whether a party has a "contractual right to bring this suit" is not a question of Article III standing. *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam); *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 594 (5th Cir. 2016); *see also SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020); *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999). "Contractual standing" is instead an issue of contract interpretation that goes to the merits of a claim. *Perry v. Thomas*, 482 U.S. 483, 492 (1987); *Maxim Crane*, 11 F.4th at 350.

Looking beyond the contract context, a dispute about ownership of an asset—a frequent source of litigation—does not deprive a federal court of jurisdiction. *See Webb v. City of Dallas*, 314 F.3d 787, 791 (5th Cir. 2002) (recognizing that it was sufficient for Article III standing that the plaintiffs alleged they owned disputed land even if they "may ultimately fail to prove ownership").[4] Imagine a diversity suit seeking to recover allegedly stolen

---

[4] Sea Wasp incorrectly cites several cases from other circuits as having held that a plaintiff must prevail in an ownership dispute to establish Article III standing. Two of the cases did not involve an ownership dispute. *See In re Bay Circle Props.*, 955 F.3d 874, 878 (11th Cir. 2020); *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006). The injury-in-fact problem was that the plaintiffs admitted that someone else owned the property at issue. *Bay Circle*, 955 F.3d at 878; *Tal*, 453 F.3d at 1254. If Domain Protection likewise asserted no property interest in the domain names, that would be an Article III problem. The other case properly treated a plaintiff's failure to meet a statutory requirement of having a "property interest in the regulated land" as a merits question subject to Rule 12(b)(6)

jewelry. Not possessing the jewelry is the plaintiff's Article III injury. The defendant may defend the claim on the ground that the plaintiff never had a right to the jewelry. But that argument goes to the merits question of who owns the jewelry. *See id.*; *see also Glen v. Am. Airlines, Inc.*, 7 F.4th 331 (5th Cir. 2021) (explaining that challenge to plaintiff's ownership of property he sought to recover "goes to the merits of [his] claim, not his standing"). If the law were otherwise, the entire lawsuit over the disputed jewelry would be resolved as a question of jurisdiction.

Substitute domain names for jewelry and this case is no different. It is enough for Article III's injury-in-fact requirement that Domain Protection contended when filing suit that it did not possess domain names it owned. Deciding who actually owns those names is a merits question. As a result, there is no jurisdictional problem with this lawsuit.

### III.

Because there is federal jurisdiction over this lawsuit, we can consider Domain Protection's appeal. It raises three issues, each searching for some relief after it established liability.

### A.

Domain Protection first looks for relief on its conversion claim. The jury awarded it zero damages for conversion, a finding that Domain Protection does not appeal. But it argues it is entitled to return of the converted property.

It is true that "[a] plaintiff who establishes conversion is entitled to return of the property." *Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex. App.—Corpus Christi 1992, writ dism'd). But there must be property to return. Sea Wasp has already returned the relevant

---

dismissal rather than a jurisdictional issue. *See Gerber v. Herskovitz*, 14 F.4th 500, 510 (6th Cir. 2021) (quoting 42 U.S.C. § 2000cc-5(5)).

property—the domain names. After the preliminary injunction ordered it to do so, Sea Wasp unlocked the registration records for the domain names, thus returning them to Domain Protection. Domain Protection asserts that there are other domain names that Sea Wasp failed to return but does not provide any evidence to support that claim. Of the 31 domain names that Domain Protection identifies as unreturned, 29 were lost because of Domain Protection's own conduct; it let their registrations expire. The remaining two were returned. To the extent others might be challenging Domain Protection's ownership of certain domain names, that cannot be remedied in a suit against Sea Wasp.

As Domain Protection did not identify any property Sea Wasp has not returned, the district court did not err.

B.

Next, Domain Protection seeks a remedy on its successful Stored Communications Act claim. It contends that even when a plaintiff cannot prove actual damages, the statute awards at least $1,000 per violation. The relevant language is that a "court may assess as damages . . . the sum of the actual damages suffered by the plaintiff[,] but in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c). Rather than reading the statute to automatically give a plaintiff $1,000 for each violation, the district court viewed the $1,000 provision as a floor on damages only once the plaintiff has proven some damages.

We agree that the $1,000 provision kicks in only if a plaintiff has suffered actual damages. In addressing nearly identical language in the Privacy Act, *see* 5 U.S.C. § 552a(g)(4)(A), the Supreme Court concluded that "person entitled to recover" refers back to the party that suffers "actual damages." *Doe v. Chao*, 540 U.S. 614, 620 (2004). Two circuits have held that this reasoning should apply to the same terms in the Stored Communications Act. *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 964–75 (11th Cir. 2016); *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 204–208

9

(4th Cir. 2009).  Last year, we said the same in an unpublished opinion.  *See Hovanec v. Miller*, 831 F. App'x 683, 685 (5th Cir. 2020).  We endorse the reasoning of those opinions and see no need to repeat it.

Because Domain Protection did not prove actual damages, it is not entitled to statutory damages.

## C.

The final place Domain Protection looks for a recovery is attorney's fees.  It argues that the district court erred in holding that attorney's fees are discretionary under the Stored Communications Act.  Once again, the words of the statute do not help Domain Protection.

The law first provides that a "person aggrieved by any violation of [the Act] . . . *may*, in a civil action, recover . . . such relief as *may* be appropriate." 18 U.S.C. § 2707(a) (emphasis added).  The following subsection then states that "appropriate relief includes (1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c); and (3) a reasonable attorney's fee and other litigation costs reasonably incurred."  *Id.* § 2707(b).  The subsection on damages provides that "[i]n the case of a successful action to enforce liability under this section, the court *may* assess the costs of the action, together with reasonable attorney fees determined by the court."  *Id.* § 2707(c) (emphasis added).

"May" is a word of discretion.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994).  Given the repeated use of "may" in the Stored Communications Act's relief provision, it seems straightforward that the Act allows but does not require an award of fees to a successful party.

Domain Protection's argument to the contrary does not overcome the statutory grant of discretion.  It tries to avoid the "may" in section 2707(a) by arguing that it does not apply to the enumerated relief that follows in section 2707(b).  Viewed on its own, section 2707(b)(3) would say that appropriate relief includes attorney's fees, which Domain Protection

contends would be a mandatory fee provision. But the best reading is that the discretionary "may" in section 2707(a) is prefatory to the "attorney's fee" provision in section 2707(b)(3).

Domain Protection counters that connecting the two provisions would result in a redundancy. The provision for injunctive relief in section 2707(b)(1) repeats the "as may be appropriate language" that appears in section 2707(a). Yet some repetition is acceptable, especially when the injunctive relief provision covers preliminary relief that would not depend on proving a violation of the statute. *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 294 (2016) (Alito, J., concurring in part and dissenting in part) ("Language is not superfluous when it removes any doubt about a point that might otherwise be unclear." (citation omitted)); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176–77 (2012) ("Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach."). And Domain Protection's argument suffers from a much bigger problem under the surplusage canon: Its reading of the statute would give no meaning to the discretionary language appearing in both sections 2707(a) and (c). *See Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 106 (2011) ("But the canon against superfluity assists only where a competing interpretation gives effect to 'every clause and word of a statute.'" (citations omitted)).

Attorney's fees are thus discretionary when a plaintiff proves a violation of the Stored Communications Act. *See Vista Mktg.*, 812 F.3d at 977–79. The district court reasonably exercised that discretion in denying

fees based on its finding that "Domain Protection has time and again litigated in an unbecoming manner, distorted the record, and misstated the law."[5]

\* \* \*

Domain Protection's attempt to recover damages or attorney's fees in this litigation comes up empty. We affirm the take-nothing judgment entered against it.

IV.

Our affirming the judgment entered against Domain Protection streamlines Sea Wasp's cross-appeal.

A.

Most of Sea Wasp's appeal challenges the district court's summary judgment rulings finding it liable under both federal and state law. Despite those rulings, however, the court ultimately entered a judgment "that Plaintiff takes nothing and that Plaintiff's case against Defendant is DISMISSED WITH PREJUDICE." In other words, Sea Wasp won the war even if it lost some battles along the way. Because the final judgment was a full victory for Sea Wasp, it is not an aggrieved party entitled to bring a cross-appeal. *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 126 (5th Cir. 2017).

This point bears further explanation because there is a recurring misunderstanding about when filing a cross-appeal is appropriate as opposed to asserting in the appellee's brief alternative grounds supporting the judgment. *See Maxim Crane*, 11 F.4th at 350–51 (holding that alternative

---

[5] Domain Protection also argues that the district court violated due process by denying the fee request without providing Domain Protection notice and an opportunity to be heard. But there is no constitutionally protected property interest in discretionary attorney's fees, so there is no due process right. *See Horton v. City of Smithville*, 117 F. App'x 345, 348 (5th Cir. 2004) ("We have recognized that discretionary statutes do not give rise to constitutionally-protected property interests.").

ground for affirming should not have been raised via cross-appeal); *Cooper Indus.*, 876 F.3d at 126–27 (same). This is not just an academic point. Cross-appeals are inefficient. They "complicate[] briefing schedules and the number and length of the briefs in ways that may generate more confusion than enlightenment." *Maxim Crane*, 11 F.4th at 350 (quoting 15A WRIGHT & MILLER, *supra*, § 3904). Cross-appeals should thus be confined to their proper place.

Justice Brandeis explained that a cross-appeal is necessary when the appellee wants to "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924). The focus is on whether the party is seeking a change in the decree, or what we today call the judgment. That makes sense because we "review judgments, not opinions." *Cooper Indus.*, 876 F.3d at 126. Thus a "cross-appeal is generally not proper to challenge a subsidiary finding or conclusion when the ultimate judgment is favorable to the party cross-appealing."[6] *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. W. Lake Acad.*, 548 F.3d 8, 23 (1st Cir. 2008)).

Consider a simple personal injury case in which the jury finds the defendant was negligent but then awards no damages. The resulting take-nothing judgment does not injure the defendant, so it could not file a cross-appeal challenging the subsidiary finding of liability.

What the defendant in our hypothetical could do is defend the take-nothing judgment on the alternative ground that it was not negligent. *Maxim Crane*, 11 F.4th at 350; 15A WRIGHT & MILLER, *supra*, at 13 ("[A]rguments that support the judgment as entered can be made without a cross-appeal."). The place for such arguments that support a judgment is in

---

[6] Sea Wasp could have appealed the preliminary injunction after it issued but did not. *See* 28 U.S.C. § 1292(a)(1).

the appellee's brief.   That is the where Sea Wasp should have put its challenge to the district court's liability rulings.

Even if we were inclined to look past the procedural misstep and treat Sea Wasp's cross-appeal on liability as an alternative ground for affirming its win, there is no need to consider an alternative ground when we have affirmed for the reasons the district court relied on.   Because we have affirmed the take-nothing judgment on the ground that Domain Protection is not entitled to damages or fees, we do not consider the liability issues.

### B.

A cross-appeal is necessary, however, for the other issue Sea Wasp raises.   Sea Wasp argues it is entitled to attorney's fees for successfully defending the Texas Theft Liability Act claim.   Because the district court did not award those fees, on this issue Sea Wasp is seeking something the judgment did not include. *Am. Ry. Express Co.*, 265 U.S. at 435.

The Texas theft statute provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees."   TEX. CIV. PRAC. & REM. CODE § 134.005(b).   Unlike the Stored Communications Act fee provision we addressed earlier, this one contains a "shall" making fees "mandatory" when a party prevails. *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 155 (5th Cir. 2017).   And a defendant generally prevails when it obtains dismissal of a Texas Theft Liability Act claim. *See id.* at 156.

Sea Wasp thus contends it is entitled to fees because the judgment dismissed the theft claim after the jury refused to award damages.   The district court thought otherwise, concluding that the preliminary injunction

14

it entered against Sea Wasp meant this claim was a wash with neither party prevailing.[7]

When both sides achieve some litigation victories on a claim, there may not be a prevailing party. *See, e.g.*, *PlainsCapital Bank v. Jani*, 2015 WL 7303934, at *3 (Tex. App.—Fort Worth Nov. 19, 2015, pet. denied) (neither party prevailed); *Mendleski v. Silvertooth*, 798 S.W.2d 30, 32 (Tex. App.—Corpus Christi 1990, no writ) (same); *Schlobohm v. Pepperidge Farm*, 806 F.2d 578, 584 (5th Cir. 1986) (same); *Tunison v. Cont'l Airlines Corp.*, 162 F.3d 1187, 1191 (D.C. Cir. 1998) (same, citing cases); *see also Travel Music of San Antonio, Inc. v. Douglas*, 2002 WL 1058527, at *3 (Tex. App.—San Antonio May 29, 2002, pet. denied) (neither side prevailed under Texas Theft Liability Act when plaintiff dismissed before trial). Finding no prevailing party was sound here. Not only did Domain Protection obtain an early win with the preliminary injunction, but by unlocking the domain names that injunction may have contributed to Domain Protection's later failure to prove damages. It would be odd—and seemingly undermine the goal of mitigating damages—if a plaintiff's obtaining preliminary relief in a case later means it has to pay defense fees if it no longer has damages to recover. The district court thus was entitled to conclude that neither side prevailed.

The intermediate Texas case Sea Wasp relies on does not counsel otherwise. *See Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 640–41 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).[8] *Glattly* does not

---

[7] The district court also believed that Domain Protection's ability to establish standing precluded an award of fees to Sea Wasp under the Texas statute. As standing (whether of the constitutional or statutory variety) is not a form of relief that Domain Protection obtained, we disagree with that rationale for denying fees.

[8] As an intermediate Texas decision, *Glattly* is persuasive authority to factor into our *Erie* guess but not decisive. *See Commissioner v. Bosch*, 387 U.S. 456, 465 (1967) (recognizing that decisions of lower state courts are not controlling "where the highest court of the State has not spoken to the point"); *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law

answer the fee question for a party in Sea Wasp's situation and, if anything, indicates that such a defendant is not entitled to fees. In *Glattly*, the *plaintiff* was seeking fees on appeal after it had established liability on its theft claim but obtained zero damages. That failure to obtain relief meant it was not entitled to fees. *Id.* at 641. To show it had prevailed, the plaintiff also tried to invoke the permanent injunction it obtained after trial preventing use of its trade secrets, but the court found the argument forfeited and also mistaken given "that the Texas Theft Liability Act does not authorize injunctive relief."[9] *Id.* Thus, the direct lesson from *Glattly* is that Domain Protection—as a plaintiff that won on liability and even obtained an injunction but lost on damages—is not entitled to fees on its theft claim.

But Domain Protection is not seeking fees on this claim, Sea Wasp is. The more notable feature of *Glattly*, then, is that the defendant that was enjoined but ultimately defeated the damages claim—sound familiar?—was

---

which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). In any event, for the reasons we explain, we conclude that it does not support Sea Wasp's fee request and if anything undermines it. *See Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (explaining that when an intermediate state court decision is meaningfully distinguishable, "we are not bound by its holding nor required to identify other persuasive data" to show the state high court would not follow it).

[9] Sea Wasp relies heavily on this language from *Glattly*, but for a number of reasons it does not help its cause. First, *Glattly* involved a post-trial injunction whereas the district court issued a preliminary injunction against Sea Wasp. That distinction already impacts one thing we have noted—that the preliminary injunction may have undermined Domain Protection's request for damages at trial. Jurisprudentially, preliminary equitable relief is on firmer footing as Texas has long recognized that "a district court has constitutional and statutory authority to issue writs of injunction," with only permanent injunctions facing a number of additional requirements. *Morgan v. Morgan*, 657 S.W.2d 484, 494 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd) (citing TEX. CONST. art. V, § 8, TEX. REV. CIV. STAT. ANN. art. 4642 (1940)). Second, as a factual matter it appears the *Glattly* injunction did not rely on the theft statute as it was directed at trade secrets. *Glattly*, 332 S.W.3d at 630 (quoting "an injunction prohibiting Specialized, Glattly, and Molina from using Air Starter's trade secrets"). Finally, even if it was improper to preliminarily enjoin Sea Wasp based on likely violations of the Texas Theft Liability Act, Sea Wasp did not appeal that injunction, so it has to be accepted for purposes of the fee inquiry.

not awarded fees and did not even ask for them.  If anything from *Glattly* informs our *Erie* guess, it is that the party most similarly situated to Sea Wasp did not receive fees.  At a more general level, *Glattly* supports the district court's middle ground—fees for neither side—as it is yet another case showing there may be no prevailing party in a case with conflicting results.

We conclude that the Supreme Court of Texas would also take that reasonable approach that courts have long recognized under other "prevailing party" statutes.  The Texas high court looks to federal law in defining "prevailing party."  *See Intercontinental Group Partnership v. KB Home Lone Star, L.P.*, 295 S.W.3d 650, 653 (Tex. 2009)  It is noteworthy, then, that in our circuit a plaintiff like Sea Wasp that obtains a preliminary injunction may be entitled to prevailing party status.  *See Dearmore v. Garland*, 519 F.3d 517 (5th Cir. 2008).  The standard used by both Texas and federal courts is whether the preliminary relief resulted in a "material change in the legal relationship between the parties."  *Id.* at 524; *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *see also Intercontinental Group*, 295 S.W.3d at 654 (quoting "material alteration of the legal relationship of the parties" standard).  The injunction here effectuated that change by requiring Sea Wasp to unlock the domain names.  As a result, both sides prevailed in some aspects of this suit and the district court did not err in refusing to award fees.

V.

The third and final appeal challenges the sanctions imposed against Schepps.  Sea Wasp filed two motions for sanctions alleging various misconduct on Schepps's part.  The court rejected most of the grounds but found that "Schepps acted in bad faith in concealing his financial interest in the case by filing documents with the Court which purposefully omitted his interest."  In the court's view, Schepps should have disclosed in the Certificate of Interested Persons his and Katz's role in creating Domain Protection and that they stood to gain if the company prevailed.  In addition

17

to citing Federal Rule of Civil Procedure 7.1, which requires a corporate party to file the certificate at the outset of each lawsuit, the court cited the Eastern District of Texas's local rule that "[a] lawyer owes candor, diligence, and utmost respect to the judiciary." *See* Fed. R. Civ. P. 7.1; E.D. Tex. Local Rule AT-3. The court required Schepps to pay Sea Wasp the cost of preparing its second sanctions motion, which is the one that cited Schepps's failure to identify his interest in Domain Protection.

Schepps challenges both the procedure and substance of the sanctions ruling. We review the imposition of sanctions for abuse of discretion. *United States v. Brown*, 72 F.3d 25, 28 (5th Cir.1995). The alleged misconduct is one of nondisclosure. So there must have been some duty for Schepps to disclose his connection to Domain Protection. *See generally Chiarella v. United States*, 445 U.S. 222, 228–29 (1980) (recognizing the common law rule that an omission qualifies as fraud only when there is a duty to disclose).

The Rules of Civil Procedure do not require this disclosure. Rule 7.1 requires a corporate party to "identif[y] any parent corporation and any publicly held corporation owning 10% or more of its stock." Fed. R. Civ. P. 7.1(a)(1). On its face, that does not cover Schepps's creditor relationship with Domain Protection. And we see no authority interpreting the rule to require such a relationship. What is more, the corporate relationships that must be disclosed under Rule 7.1 are those that might warrant a judge's disqualification based on a holding in such an entity. *See id.* committee note on rules—2002 (explaining that the disclosure requirement "reflects the 'financial interest' standard" that governs disqualification under "Canon 3C(1)(c) of the Code of Conduct for United States Judges"). Of course, as an attorney in the case, Schepps was already known to the court for recusal purposes.

That leaves the general duty of candor that is part of the local rules and a lawyer's professional obligations. The duty of candor extends beyond not making false statements. An omission may also violate the duty. For

example, an attorney was sanctioned when he sought a continuance citing his recent retention by the creditors' committee without disclosing that he was already familiar with the case because of work for a particular creditor. *In re Renco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988). That nondisclosure was "highly relevant to the question of whether the bankruptcy judge should have granted a continuance." *Id.* A relevance requirement is consistent with the general principle that nondisclosures are actionable only when the omitted fact is material. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213 (Tex. 2019).

Consequently, Schepps's failure to disclose his relationship with Domain Protection is sanctionable for violating the duty of candor only if that relationship was relevant to some decision in this case. That relevance is not apparent from the record. But recognizing the complexity of this case and the district court's much greater familiarity with it, we believe a remand is appropriate for the court to identify when Schepps should have disclosed his relationship with Domain Protection and why his failure to do so mattered. Because that remand will allow the parties an opportunity to brief this question, we need not decide Schepps's procedural challenges to the sanctions ruling that we are vacating.

\*\*\*

The judgment is AFFIRMED except for the sanctions. We VACATE the sanctions and REMAND for further proceedings.