# Supreme Court of Texas

No. 21-0727

Maxim Crane Works, L.P.,

*Appellant,*

v.

Zurich American Insurance Company,

*Appellee*

On Certified Question from the
United States Court of Appeals for the Fifth Circuit

**Argued December 2, 2021**

JUSTICE BUSBY delivered the opinion of the Court.

The United States Court of Appeals for the Fifth Circuit has requested our guidance on the scope of the so-called "employee exception" to the Texas Anti-Indemnity Act (TAIA). In the construction context, the TAIA generally prohibits one party (the indemnitor) from indemnifying or insuring another party (the indemnitee) against a claim caused by the negligence or other fault of the *indemnitee* or its employees or agents. *See* TEX. INS. CODE § 151.102. But an exception permits the

indemnitor to indemnify or insure the indemnitee against a claim for the bodily injury or death of the *indemnitor's* employee, agent, or subcontractor. *See id.* § 151.103. The question before us is whether employee status under this exception is affected by certain provisions of the Texas Workers' Compensation Act (TWCA).

Here, a general contractor's employee injured in a crane accident obtained a negligence judgment in Texas state court against the subcontractor that operated the crane (Berkel) and the company that leased it the crane (Maxim). Berkel had provided Maxim with coverage as an additional insured, making Berkel an indemnitor and Maxim an indemnitee for TAIA purposes. Maxim settled with the injured worker and unsuccessfully sought reimbursement from Berkel's insurer (Zurich). Berkel appealed and the court of appeals reversed the judgment against it, holding that the injured worker and Berkel were "statutory co-employees" of the general contractor under the TWCA, which therefore provided the worker's exclusive remedy. *Berkel & Co. Contractors, Inc. v. Lee*, 543 S.W.3d 288, 296 (Tex. App.—Houston [14th Dist.] 2018), *aff'd in part, rev'd in part on other grounds*, 612 S.W.3d 280 (Tex. 2020).

In this separate suit, which was removed to federal court, Maxim and Zurich dispute whether the additional-insured coverage is enforceable. The resolution of their dispute turns on whether the injured worker is considered an "employee" of Berkel, the indemnitor, under TAIA section 151.103. Specifically, the Fifth Circuit asks us whether that exception "allows additional insured coverage when an injured worker brings a personal injury claim against the additional

insured (indemnitee), and the worker and the indemnit[or] are deemed 'co-employees' . . . for purposes of the TWCA."[1]

We answer no.  Deeming an injured worker to be a co-employee *with* the indemnitor for purposes of the TWCA does not make that worker an employee *of* the indemnitor under the plain language of the TAIA.  Because the Texas Legislature expressly separated these two statutory schemes, the TWCA does not affect the enforceability of an additional-insured provision under the TAIA.

## BACKGROUND

### A.    The parties and their insurance policies

The parties have established the relevant facts by stipulation. Skanska USA Building, Inc. was the general contractor on a 2013 construction project to build a large office campus in Houston.  Skanska offered a contractor-controlled insurance program (CCIP) that included (1) workers' compensation coverage and (2) commercial general liability coverage under a policy (Skanska CGL Policy) issued by appellee Zurich American Insurance Company.

Skanska required each subcontractor on the project to enroll in its CCIP as a condition of performing work on the jobsite.  But Skanska's CCIP excluded certain entities from coverage "[a]t the discretion of

---

[1] We note (and the parties agree) that there appears to be a typographical error in the certified question, the unaltered version of which requests guidance on the operation of section 151.103 when "the worker and the indemnitee are deemed 'co-employees' of the indemnitor for purposes of the TWCA."  As we explain further below, the injured worker in this dispute was previously deemed the co-employee of the indemnitor (Berkel) for purposes of the TWCA but was never deemed a co-employee of the indemnitee (Maxim).

Skanska or subject to State regulations," including "[s]ubcontractors, and any of their respective sub-subcontractors, who do not perform any actual labor on the Project Site" as well as "[v]endors, suppliers . . . and others who merely transport, pickup, deliver, or carry materials, personnel, parts or equipment or any other items or persons to or from the Project Site."

Skanska hired Berkel & Company Contractors, Inc. as a subcontractor for the project. Although Berkel enrolled in Skanska's CCIP as required, Berkel also had its own commercial general liability policy issued by Zurich (Berkel CGL Policy).

Berkel then leased a crane from appellant Maxim Crane Works, L.P. for use on the construction project. Berkel and Maxim entered into a Bare Rental Agreement (the Equipment Lease) under which Berkel agreed to be responsible for compliance with all applicable laws, regulations, and ordinances in respect to the operation and maintenance of the crane while in Berkel's possession. Berkel also agreed to name Maxim as an additional insured under Berkel's CGL policy, with limits of liability not less than $2 million for each occurrence.

Although Maxim qualified as an "Additional Insured" under the Berkel CGL Policy, subject to any applicable provisions or exclusions, Maxim also had its own commercial general liability policy issued by Zurich (Maxim CGL Policy). Maxim did not enroll in Skanska's CCIP.

### B. Maxim's settlement of the state-court suit against it and Zurich's refusal to cover Maxim under Berkel's policy

On September 30, 2013, a Berkel employee was operating Maxim's crane at the construction site when the crane boom collapsed.

Part of the crane crushed the leg of Skanska employee Tyler Lee, which ultimately had to be amputated above the knee.

Lee applied for and received workers' compensation benefits under Skanska's CCIP. Lee and his wife then sued Berkel, Maxim, and other defendants in Texas state court, alleging various theories of negligence. Although no employee of Maxim was present on the construction site at the time of the accident, the Lees alleged that Maxim was independently liable for its own negligence.

Maxim sought coverage under the Berkel CGL policy, requesting defense, indemnity, and additional-insured status with respect to the Lees' claims. Zurich denied coverage based on sections 151.102 through 151.104 of the TAIA, explaining that "the indemnity provision(s) in the [Equipment Lease] is void and unenforceable because this loss involved an employee of the general contractor, Skanska."

Maxim then filed cross-claims against Berkel in the Lees' state-court action, alleging breach of contract and seeking defense, indemnity, and contribution under Texas statutory and common law. Maxim alleged that Berkel breached the Equipment Lease by, among other things,[2] "refusing to defend and indemnify MAXIM" and "refusing to meet its contractual obligation to [e]nsure that MAXIM was provided coverage as an additional insured under Berkel's insurance policy(ies)."

---

[2] Maxim also alleged that Berkel breached the Equipment Lease by: failing to operate the crane safely and in accordance with its operator's manual, OSHA and ANSI standards, and other applicable laws and regulations; failing to ensure the crane was operated by experienced and competent persons; operating the crane in excess of manufacturer safety requirements and rated load capacities; and subjecting the crane to careless and needlessly rough usage.

The Lees' suit was tried before a jury. Although Maxim requested that the jury be asked whether Berkel breached the lease, the trial court sustained Berkel's objection to including the question in the charge. The jury found both Maxim and Berkel negligent and awarded the Lees actual damages of $35,443,006. The jury placed 90% of the responsibility on Berkel and 10% on Maxim.

After trial but prior to final judgment, the Lees and Maxim reached a settlement for $3,444,300.60. Zurich paid the Lees that amount under the Maxim CGL Policy and Maxim reimbursed Zurich for $3 million of the settlement costs, per the deductible endorsement in the policy. Zurich also billed Maxim $824,839.38 for defense costs, which Maxim reimbursed.

Maxim filed a motion for entry of judgment on its cross-claims against Berkel. The trial court denied the motion, concluding that "pursuant to the jury's findings as to the negligence questions in the Court's Jury Charge, and Chapter 151 of the Texas Insurance Code, Maxim is not entitled to reimbursement of [its] Defense Fees, Costs, and Expenses of and from Berkel." The court ultimately "render[ed] judgment for Berkel against Maxim on Maxim's Cross Action."

Both Berkel and Maxim appealed the trial court's judgment. The Fourteenth Court of Appeals reversed the judgment against Berkel, holding that the workers' compensation scheme provided the Lees' exclusive remedy. *Berkel & Co.*, 543 S.W.3d at 295–96.

The TWCA provides that recovery of workers' compensation benefits is a covered employee's exclusive remedy against his employer and co-employees for work-related injury. *See* TEX. LAB. CODE

§ 408.001(a). Although Berkel "is not Lee's actual employer or co-employee," the court of appeals explained that section 406.123 of the TWCA "allow[s] the general contractor to be deemed the statutory employer of the subcontractor and the subcontractor's employees '[only] for purposes of the workers' compensation laws of this state'" if the general contractor has agreed in writing to provide them with workers' compensation insurance. *Berkel & Co.*, 543 S.W.3d at 296 (quoting TEX. LAB. CODE § 406.123(e)). "Thus, for purposes of the [TWCA], Skanska is Berkel's statutory employer, and Lee, as Skanska's actual employee, is Berkel's statutory co-employee." *Id.* "As a co-employee [of Lee], Berkel [was] entitled to rely on the [TWCA's] exclusive-remedy provision," and "the trial court erred by rendering judgment against Berkel on the findings that Berkel was negligent and grossly negligent." *Id.*

The court of appeals affirmed the trial court's judgment against Maxim in a separate opinion without reaching the merits of Maxim's TAIA argument. *See Maxim Crane Works, L.P. v. Berkel & Co. Contractors, Inc.*, No. 14-15-00614-CV, 2016 WL 4198138 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, pet. denied).[3] Maxim subsequently filed a petition for review in this Court, which we denied.

## C. Maxim's coverage suit against Zurich

In April 2018, Maxim made another demand on Zurich for coverage as an additional insured under Berkel's CGL Policy, seeking

---

[3] Because Maxim failed to provide a complete reporter's record or clerk's record, the court of appeals concluded that the record Maxim had provided was inadequate to show preservation of error or evaluate any harm to Maxim. *Maxim*, 2016 WL 4198138, at *1 & n.3.

"reimbursement of [the] defense costs [Maxim] incurred in defending the underlying lawsuit . . . and reimbursement of the indemnity monies used to settle the underlying lawsuit, post-verdict." Zurich denied coverage again for the same reasons it asserted in response to Maxim's prior demand.

Maxim then sued Zurich in state court, seeking coverage under the Berkel CGL Policy. Zurich removed the suit to federal court and the parties agreed to file cross-motions for summary judgment with a joint stipulation of facts.

The federal district court concluded that absent an exception, the TAIA applies to the Equipment Lease and to the Berkel CGL Policy's designation of Maxim as an additional insured. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 392 F. Supp. 3d 731, 740 (S.D. Tex. 2019). Rejecting Maxim's suggestion that the terms "co-employee" and "co-employer" are interchangeable under the TAIA and TWCA, the district court concluded that the TAIA's employee exception was inapplicable and therefore granted summary judgment for Zurich, dismissing Maxim's claims with prejudice. *Id.* at 745–46.

Maxim appealed the district court's decision and asked the Fifth Circuit to certify the TAIA question to this Court, which it did. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345 (5th Cir. 2021). We accepted the question. *See* TEX. CONST. art. V, § 3–c(a); TEX. R. APP. P. 58.1.

ANALYSIS

## I. Applicable law and principles of statutory interpretation

The TAIA's central provision generally prohibits indemnification provisions in "construction contracts"[4] and certain related agreements:

> Except as provided by Section 151.103, a provision in a construction contract, or in an agreement collateral to or affecting a construction contract, is void and unenforceable as against public policy to the extent that it requires an indemnitor to indemnify, hold harmless, or defend a party, including a third party, against a claim caused by the negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of the indemnitee, its agent or employee, or any third party under the control or supervision of the indemnitee, other than the indemnitor or its agent, employee, or subcontractor of any tier.

TEX. INS. CODE § 151.102. In practice, this provision prohibits Entity A from requiring Entity B to indemnify Entity A against the consequences of the negligence of Entity A, Entity A's agents, or Entity A's employees. But the provision leaves Entity A free to provide voluntarily what it is precluded from requiring of Entity B. In other words, section 151.102 does not prevent Entity A from providing the same indemnification—indemnification against the consequences of the negligence of Entity A, Entity A's agents, or Entity A's employees—to Entity B.

---

[4] *See* TEX. INS. CODE § 151.001(5) (defining "construction contract" to include "a contract, subcontract, or agreement . . . for the furnishing of material or equipment for, a building, structure, appurtenance, or other improvement to or on public or private real property").

The TAIA likewise limits the enforceability of certain provisions regarding additional-insured coverage:

> Except as provided by Subsection (b), a provision in a construction contract that requires the purchase of additional insured coverage, or any coverage endorsement, or provision within an insurance policy providing additional insured coverage, is void and unenforceable to the extent that it requires or provides coverage the scope of which is prohibited under this subchapter for an agreement to indemnify, hold harmless, or defend.

*Id.* § 151.104(a). Thus, a provision requiring additional-insured coverage for certain types of claims will be void under section 151.104 of the TAIA if an agreement to indemnify against those claims would be void under section 151.102.

The TAIA also includes an exception to these general prohibitions that allows an indemnitor to provide indemnity or additional-insured coverage against claims by its employees, agents, and subcontractors. That exception provides:

> Section 151.102 does not apply to a provision in a construction contract that requires a person to indemnify, hold harmless, or defend another party to the construction contract or a third party against a claim for the bodily injury or death of an employee of the indemnitor, its agent, or its subcontractor of any tier.

*Id.* § 151.103.[5]

---

[5] In addition to the exception at issue here, the TAIA contains several exclusions for certain types of agreements and provisions. *See* TEX. INS. CODE § 151.105.

Here, the jury considering the Lees' claims for personal injury found Maxim negligent and partially responsible for Lee's harm. Under TAIA sections 151.102 and 151.104, therefore, any provision in the Equipment Lease or the Berkel CGL Policy that requires Berkel or Zurich to insure Maxim against claims caused by Maxim's own negligence would be void. The parties agree that Zurich's liability hinges on whether the TAIA's employee exception applies to the Lees' claims—that is, on whether Lee was "an employee of the indemnitor," Berkel. *Id.* All parties agree that Lee—who worked for Skanska—is not Berkel's "employee" under the common, ordinary meaning of that term. But Maxim contends that we should construe "employee" in section 151.103 to include any person or entity that the TWCA would treat as an employee of the indemnitor.

"Statutory construction is a question of law for the court to decide." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). "We review issues of statutory construction de novo." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). "When construing a statute, our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007); *see also City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995) ("Legislative intent remains the polestar of statutory construction.").

"Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex.

2006); *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) ("[W]hen we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be."); *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920) ("Courts must take statutes as they find them. . . . [T]hey must find [the statute's] intent in its language, and not elsewhere."). "If a statute is clear and unambiguous, we apply its words according to their common meaning without resort to rules of construction or extrinsic aids." *In re Estate of Nash*, 220 S.W.3d at 917; *see also Fitzgerald*, 996 S.W.2d at 865–66 ("[I]f a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity.").

"We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired . . . ." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008). Otherwise, "[w]ords not statutorily defined bear their common, ordinary meaning unless a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018); *see also Tex. Lottery Comm'n*, 325 S.W.3d at 635 ("We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results.").

## II.    The TWCA does not affect the ordinary meaning of "employee" in the TAIA exception.

Applying these principles to section 151.103's employee exception, we observe that the Legislature did not define "employee" in

the TAIA. We agree with the parties that Lee, who worked for general contractor Skanska, is not the "employee" of subcontractor Berkel under the common, ordinary meaning of that term as defined in the dictionary.[6] Ordinarily, this conclusion would end our inquiry. But because Maxim contends that the ordinary meaning is inconsistent with the statutory scheme, we must also consider whether "a more precise definition is apparent from the statutory context or the plain meaning yields an absurd result." *Fort Worth Transp. Auth.*, 547 S.W.3d at 838.

Relying on statements made as part of the legislative process, Maxim argues that the Legislature's primary purpose in enacting the TAIA was to prevent "cram down" indemnification—that is, prevent upper-tier contractors from using superior bargaining power to "forc[e] their subcontractors to accept crippling indemnification obligations . . . without either control over the operations of the jobsite or the means to obtain sufficient insurance coverage." Maxim argues that as an equipment supplier, it had no such power here.

Maxim also emphasizes the similarity between the exception in section 151.103 and the operation of a "knock-for-knock" indemnity provision, under which contracting parties accept financial responsibility for the personal injury claims of their own employees even if the injury is due to the fault or negligence of other parties to the contract. Maxim asserts that knock-for-knock indemnity is common in the construction industry due to the prevalence of "over actions" in

---

[6] *See, e.g.*, *Employee*, BLACK'S LAW DICTIONARY 662 (11th ed. 2019) (defining "employee" as "[s]omeone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance").

which an employee sues another party for contributory negligence. Maxim contends that construing "employee" in section 151.103 to include "co-employee" would allow indemnity for such actions without frustrating the primary purpose of the TAIA.

We reject Maxim's arguments for expanding the employee exception beyond the plain meaning of the enacted text of section 151.103. Contrary to Maxim's position, no alternative definition of employee is "apparent from the context" of either the TWCA or the TAIA. *Cadena Comercial USA Corp. v. TABC*, 518 S.W.3d 318, 325 (Tex. 2017).

Under the TWCA, a "general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." TEX. LAB. CODE § 406.123(a). Entering into such an agreement "makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state." *Id.* § 406.123(e).

Section 406.123 "offers incentives to general contractors to provide workers' compensation coverage broadly to work site employees," *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 444 (Tex. 2009), by deeming the general contractors "statutory employer[s] of the subcontractor's employees," *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). "Such an employer is immune from claims brought by a subcontractor's employee because the employee's exclusive remedy is his workers' compensation benefits." *Id.* In other words, the TWCA

"specifically protects contractors—who are not direct employers of subcontractors' employees—by allowing them to assert as a statutorily deemed employer the exclusive remedy defense." *Entergy Gulf States, Inc.*, 282 S.W.3d at 444.

Maxim complains that there is no reason why "employees and co-employees would be treated the same for tort immunity purposes, but completely differently under the TAIA's Employee Exception." But as we have previously recognized, even the TWCA itself "defines the terms 'employee' and 'employer' in different ways depending on the context." *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 77 (Tex. 2016).

Maxim has not pointed to, and we have not identified, any statutory text that would support applying TWCA section 406.123(e) in the TAIA context. To the contrary, by its own terms, this section of the TWCA modifies the relationship between a general contractor and the employees of a subcontractor "*only* for purposes of the workers' compensation laws of this state." TEX. LAB. CODE § 406.123(e) (emphasis added). Nor is there any language in the TAIA to suggest that any terms left undefined should conform to a TWCA definition of those terms. For its part, the TAIA clarifies that it "does not affect . . . the benefits and protections under the workers' compensation laws of this state." TEX. INS. CODE § 151.105(5). Thus, the available textual indications of legislative intent oppose importing TWCA section 406.123(e) into the TAIA.

Moreover, the terms "co-employee" and "co-employer" are merely the labels courts have used to describe an employment relationship that section 406.123(e) has statutorily expanded for workers' compensation

purposes. Neither term appears in the text of the TWCA or the TAIA. We decline to rely on courts' attempts to describe the practical effect of section 406.123(e) as a basis for expanding that effect to other statutory schemes. Although subcontractors of different contracting tiers may be both "co-employer" and "co-employee" to each other in some instances, *see, e.g.*, *Austin Bridge & Rd., LP v. Suarez*, 556 S.W.3d 363, 384 (Tex. App.—Houston [1st Dist.] 2018, pet. denied), we reject Maxim's invitation to collapse all tiers of contractors and subcontractors such that the terms are always interchangeable.

In any event, Maxim's argument would fail on its own terms. At most, TWCA section 406.123(e) would impact the relevant employment relationships in the following two ways. First, the section would make Skanska the employer of Berkel, in turn making Berkel the "co-employee" of Lee. Second, the section would make Skanska the employer of Berkel's employees, which in turn makes Berkel and Skanska "co-employers" of Berkel's employees. As the federal district court correctly recognized, neither of these effects warrants treating Berkel as the employer of *Skanska's* employees such that Berkel and Skanska would be deemed "co-employers" of Lee. *See Maxim Crane Works*, 392 F. Supp. 3d at 744–45. Thus, even if section 406.123 were applicable in the TAIA context (which it is not), the Lees' claims against Maxim would still fall outside the scope of the TAIA employee exception.

Maxim also argues that "the mere fortuity of where the crane landed should not alter Zurich's obligation to provide coverage." Such public policy arguments do not approach the level of an absurd result that could affect our construction of the statute.

As explained above, section 151.102 primarily blocks enforcement of an obligation to indemnify another party or its employees for their fault, but it allows the obligor to indemnify others voluntarily against the obligor's own fault. Because the obligor's choice is voluntary, there is no concern about cram-down indemnification. Furthermore, no indemnification is occurring here at all—cram-down or otherwise. Voiding the additional-insured provision in the Berkel CGL Policy does not require Maxim to pay for anyone else's negligence because, according to the jury, the portion of the Lees' damages that Maxim must pay is attributable to its own negligence.

Thus, Maxim's absurdity argument boils down to a complaint that it is unfair to subject Maxim alone to tort liability for Lee's injury when other responsible parties are protected by the TWCA's exclusive remedy provision. But that protection does not derive from the TAIA employee exception; it stems from the TWCA's provision of "reciprocal benefits to subscribing employers and their employees." *TIC Energy & Chem., Inc.*, 498 S.W.3d at 72. By way of illustration, if Berkel had been given the option and elected not to enroll in Skanska's CCIP, Berkel would not have been entitled to assert the exclusive remedy defense. Conversely, although the parties dispute the degree of Maxim's relative bargaining power, Maxim does not dispute that neither the TWCA nor the TAIA prohibited Skanska from allowing equipment vendors like Maxim to participate in Skanska's CCIP and thereby entitle them to assert the exclusive remedy defense as well.

Thus, any disparate treatment of Maxim and Berkel under the TAIA is not an absurd result, but rather the logical consequence of

Skanska's decision to exclude equipment vendors like Maxim from enrolling in its CCIP. *Cf. Etie v. Walsh & Albert Co.*, 135 S.W.3d 764, 768 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("We hold that the Act's deemed employer/employee relationship extends throughout all tiers of subcontractors when the general contractor has purchased workers' compensation insurance that covers *all* of the workers on the site." (emphasis added)).  If anything, Maxim's and Zurich's arguments about the relative bargaining power of Maxim and Berkel—or of Maxim and Skanska—only serve to underscore the extent to which questions of public policy invariably play a role in determining which party to a construction contract had superior bargaining power.  When interpreting a statute, courts do not resolve such policy-laden questions or speculate as to the operative criteria for doing so in the absence of any instruction from the Legislature.

## CONCLUSION

Because Maxim has failed to identify any objective indications that the Legislature did not intend for the ordinary meaning of employee to govern, we decline to consider Maxim's extrinsic sources as evidence of the purpose and object of the TAIA.  *See Fitzgerald*, 996 S.W.2d at 865–66 ("[I]f a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity.").  We therefore hold that the word "employee" in section 151.103 of the TAIA bears its common, ordinary meaning, which is not affected by whether the indemnitor and injured employee are considered co-employees for purposes of the TWCA.  We answer the certified question no.

_____
J. Brett Busby
Justice

**OPINION DELIVERED:** March 4, 2022